17084

THE STATE, Respondent, v. HORACE LITTLEJOHN, Appellant

(89 S. E. (2d) 924)

*Messrs. Julien D. Wyatt,* and *Felix L. Finley, Jr.,* of Pickens, and *John T. Gentry,* of Easley, *for Appellant,*

*James R. Mann, Esq., Solicitor,* of Greenville, *for Respondent,*

November 14, 1955.

LEGGE, Justice.

Horace Littlejohn was convicted under an indictment charging that on May 1, 1954, he "did willfully and unlawfully have in his possession in his cafe place of business seventeen half-pints and four pints of alcoholic liquors." His appeal charges error on the part of the trial judge: (1) in refusing to direct a verdict in his favor, and (2) in refusing certain requests to charge.

Appellant, a Negro, owns and operates a cafe and beer parlor and pool room on the ground floor of a two-story concrete block building in or near the town of Clemson in Pickens County. He also owns and operates a motor court on U. S. Highway No. 123 about two miles distant from Clemson. He and his wife live at the motor court. Mildred Chalmers is employed in the cafe and lives on the second floor of that building. Access to that floor is by means of a stairway on the outside of the building.

On the afternoon of May 1, 1954, Deputy Sheriffs Ross, Foster and Merck went to appellant's place of business in Clemson with a warrant for its search. Appellant and his employee, Mildred Chalmers, were in the cafe. Ross and Merck searched the ground floor, while Foster went up the outside stairs to search the upper floor. Merck testified that in the kitchen he found "a funnel, a measuring cup, and four or five half-pint bottles." Neither he nor any other witnesses testified that these were whiskey bottles or that there was anything about the funnel or the measuring cup to indicate that they were used, or usable, in connection with alcoholic liquor.

Foster, having found the door to the upstairs apartment locked, returned to the cafe and so informed Ross, who asked appellant for the keys. At this point there is a slight, and

we think immaterial, variance in the testimony of the several witnesses. According to Ross, appellant turned to Mildred Chalmers and told her to go upstairs, and she picked up a bunch of keys that were lying near the cash register, and went upstairs with Ross and Foster and opened the door for them. According to Foster, "he (Ross) asked Littlejohn for the keys, and this girl that worked behind the counter handed him the keys." According to Merck, Foster "came back and asked for the key and Horace told a colored girl there, Mildred, I believe her name is, to get the key for him," and she got the key, which "was laying on the shelf by the cash register."

Ross and Foster, in company with Mildred Chalmers, then went outside of the building and up the stairs to the second floor, and Mildred Chalmers unlocked the door. Ross returned to the cafe, and Foster proceeded to search the several rooms upstairs. He testified that they were four in number, namely: (1) a bedroom, in which was, in addition to a bed and dresser and the usual furniture, a baby's bed; (2) a kitchen; (3) a "room with mostly junk in it"; and (4) another room, the contents of which he did not recall. Under the baby's bed he found a box containing four pint bottles and 'seventeen half-pints of assorted bourbon and blended whiskey. Affixed to each bottle were the proper South Carolina revenue stamps. In response to his inquiry, Mildred Chalmers stated that the whiskey was hers.

Appellant denied any knowledge of the whiskey. He testified that Mildred Chalmers, who had formerly lived in North Carolina, had been in his employ for about two months; that she rented the entire apartment above the cafe, paying as rent $6.00 per week; that she was the only person who had a key to the upstairs apartment; that he had been to Greenville on the afternoon in question, and had driven up to the cafe just before the officers arrived; that he had not known that the bunch of keys was by the cash register; and that when the officer had asked for the key

to the upstairs apartment he had replied that the upstairs was Mildred's apartment and that she had the keys.

Mildred Chalmers, who gave her age as twenty-one years, testified that she had been employed by appellant for several weeks, at a salary of $26.00 per week; that she lived in the apartment upstairs, paying the weekly rental of $6.00 sometimes to appellant and sometimes to his wife; that on her key-ring were not only the key to her apartment but also the keys to the cafe and the money box and the pool room; and that appellant had no key to her apartment. She said that she had bought the whiskey at a licensed liquor store in the nearby town of Seneca the day before, which was a Friday as she was planning to give a party in her apartment on the following Monday night for some friends from North Carolina; and that the whiskey, which cost "about $30.00 or $40.00", had been bought with her own money.

In considering whether the court below erred in not directing a verdict in favor of the defendant, we must view the foregoing testimony in the light most favorable to the State. *State v. Epes,* 209 S. C. 246, 39 S. E. (2d) 769. It must be remembered, too, that there is one test by which circumstantial evidence is to be measured by the jury in its deliberations, and quite another by which it is to be measured by the trial judge in his consideration of the accused's motion for a directed verdict. As to the former, it is necessary that every circumstance relied upon by the state be proven beyond a reasonable doubt; and that all of the circumstances so proven be consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis. It is not sufficient that they create a probability, though a strong one; and if, assuming them to be true, they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed. *State v. Kimbrell,* 191 S. C. 238, 4 S. E. (2d) 121. So the trial judge charged, in substance, in the instant

case, concluding with the following: "In other words, in the consideration of circumstantial evidence, the jury must seek some explanation thereof other than the guilt of the accused, and, if such reasonable explanation can be found, the jury cannot convict on such evidence." Such test goes to the weight of the evidence, and is therefore to be applied by the jury in their consideration of it. *State v. Roddey,* 126 S. C. 499, 120 S. E. 359. But on a motion for direction of verdict, the trial judge is concerned with the existence or non-existence of evidence, not with its weight; and, although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825.

Section 4-95 of the 1952 Code of Laws, upon which the state relies to sustain the conviction here, reads as follows:

"It shall be unlawful for any person to store or have in possession any alcoholic liquors in his place of business other than a licensed liquor store. A place of business shall include:

"(1) Any place where goods, wares or merchandise are sold, offered for sale or distributed, and also places of amusement;

"(2) Residences and transportation vehicles when sale of any merchandise is made therefrom; and

"(3) Outbuildings, warehouses and garages when adjacent to or used in connection with any place of business where any goods, wares or merchandise are sold, offered for sale or distributed."

There being no direct evidence of appellant's guilt, the trial judge should have granted his motion for a directed verdict unless the facts and circumstances testified to by the state's witnesses were such that from them his guilt

might have been fairly and logically deduced, not merely suspected. The elements of the offense requiring such proof were: (1) that the apartment on the second floor of appellant's building was used in connection with his cafe business; and (2) that the whiskey found in the apartment was his and had been put there by him or with his knowledge.

There was no evidence from which, in our opinion, it could reasonably be inferred that the second floor of the building was used in connection with appellant's cafe business. No such inference is warranted by the mere fact of appellant's ownership of the building, or by his employee-tenant's occupancy of the second floor as her residence. We have already adverted to the testimony of the three witnesses for the state concerning the bunch of keys, among them the key to the upstairs apartment, that was lying by the cash register in the cafe. Whether we accept Ross' version of his conversation with appellant, or Foster's, or Merck's, the fact remains undisputed that nothing was said or done concerning the keys from which his guilt could reasonably be inferred. The solicitor points out that the whiskey was in small bottles, mostly half-pints, a size convenient for carrying on the person, and that it was of assorted brands, indicating that its sale was contemplated; but while these facts might have afforded some basis for disbelief of Mildred Chalmers' testimony about the impending party for her friends, it is difficult to see their tendency to prove appellant's guilt, in the absence of some substantial testimony connecting him with ownership of the whiskey. In short, careful examination of the testimony convinces us that all of the facts and circumstances disclosed by it, considered together, fall short of that degree of substantiality required for fair and logical inference of guilt; and that the trial judge should, therefore, have directed a verdict of acquittal. Such conclusion renders unnecessary consideration of appellant's remaining exceptions.

Reversed.

BAKER, C. J., and TAYLOR, J., concur.

STUKES and OXNER, JJ., dissent.

STUKES, Justice (dissenting).

I regret that I cannot concur in the opinion of Mr. Justice Legge. I think the issue of appellant's guilt was properly submitted to the jury.

The "assorted whiskies" were in an upstairs room over his cafe-pool room (also referred to in the testimony as a beer tavern) and the evidence indicated that he had at least equal access to the key to the room. He owned the building. It is quite understandable that the jury discredited the testimony of his employee-roomer. It is difficult to believe that any reasonable jury would have accepted it as the truth.

OXNER, J., concurs.