## 2523

The STATE, Respondent v. Everette Leon WAKEFIELD, Jr., Appellant.

(473 S.E. (2d) 831)

Court of Appeals

*Steven E. Mundy,* Abbeville, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,* and *Senior Assistant Attorney General William Edgar Salter, III,* Columbia; and *Solicitor W. Townes Jones, IV,* Greenwood, *for respondent.*

Submitted June 4, 1996.

Decided June 17, 1996; Reh. Den. Aug. 22, 1996.

ANDERSON, Judge:

Everette Leon Wakefield, Jr., was convicted of distribution of crack cocaine, pursuant to S.C. Code Ann. § 44-53-375(B) (Supp. 1994), and distribution of crack cocaine within a one-half mile radius of a playground, pursuant to S.C. Code Ann. § 44-53-445 (Supp. 1995). Wakefield appeals only his conviction for distribution of crack cocaine.[1] We affirm.[2]

## FACTS/PROCEDURAL BACKGROUND
In his initial brief, Wakefield states the following issue:

> The State failed to prove beyond a reasonable doubt that Wakefield committed the crime of distributing crack cocaine.

---

[1] Wakefield does not contest his conviction for distribution of crack cocaine within a one-half mile radius of a playground. *See State v. Sullivan,* 277 S.C. 35, 282 S.E. (2d) 838 (1981) (issue not raised in brief is deemed abandoned).

[2] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

In his reply brief, Wakefield states the following issues:

(1) Did the trial judge properly deny [Wakefield's] motion for a directed verdict on the charge of distribution of crack cocaine because the direct and circumstantial evidence, viewed in the light most favorable to the State, reasonably tended to prove that [Wakefield] was guilty of this offense or was such that his guilt could be fairly and logically deduced?
(2) Whether the State met its burden of proving beyond a reasonable doubt that Wakefield committed the crime of distributing crack cocaine.

At the close of the State's case, Wakefield moved for a directed verdict on the grounds the State did not present "enough credible evidence to go to the jury."

The State responds to Wakefield's appeal primarily addressing the trial judge's denial of Wakefield's motion for a directed verdict. The State asserts Wakefield did not raise the issue of whether the State failed to prove beyond a reasonable doubt that he committed the crime of distributing crack cocaine. As such, the State argues Wakefield did not preserve this issue for appeal.

Technically, Wakefield's Issue (1) in his reply brief should not be considered on appeal because all issues must be argued in the initial briefs. *See* Rule 207(b)(1)(B), (D), SCACR; Rule 210(b), SCACR; *see also First State Sav. and Loan v. Phelps*, 299 S.C. 441, 385 S.E. (2d) 821 (1989); *Sloan Constr. Co. v. South Carolina Bd. of Health and Envtl. Control*, 285 S.C. 523, 331 S.E. (2d) 345 (1985). Additionally, the issue stated in Wakefield's initial brief was not raised to the trial judge, and thus, was not preserved for appeal. *See Cook v. South Carolina Dep't of Highways and Pub. Transp.*, 309 S.C. 179, 420 S.E. (2d) 847 (1992) (an issue not ruled upon by the trial judge is not preserved for appeal). However, since the State addressed the denial of Wakefield's motion for a directed verdict and was not prejudiced by the revision in the reply brief, the Court addresses the merits of this issue. In addition, Wakefield's appeal only addresses his conviction for distribution of crack cocaine and not distribution of crack cocaine within a one-half mile radius of a playground. The State points out Wakefield's failure to appeal

both convictions; however, the convictions are so closely connected it is necessary to review both.

In November of 1992, South Carolina Law Enforcement Division (SLED) agents Eleanor Savage and Coby Perry were assisting Investigator Brian Miller, a City of Greenwood police officer, in an ongoing narcotics investigation. Around 1:00 p.m. on November 12, 1992, Agents Savage and Perry met with Investigator Miller at a predetermined location in Greenwood. At that time, Agent Perry checked the surveillance equipment including Agent Savage's "body wire," a small transmitting device which allowed the other officers to conduct audio surveillance on her and the confidential informant. Agent Perry searched the confidential informant to insure that he did not have any drugs or weapons in his possession. Then, they went to an area of Greenwood known as Palmetto Court. At this location, Agent Savage was unsuccessful in finding someone from whom she could purchase drugs. While driving to the locations, Agent Savage and the confidential informant drove in one vehicle and Agent Perry and Investigator Miller followed in another vehicle approximately 200 yards behind. By speaking over her wire, Agent Savage kept Agent Perry informed of her location.

After Agent Savage and the confidential informant left Palmetto Court, they went to 333 Marion Street in Greenwood. Agent Perry and Investigator Miller followed Agent Savage's vehicle and continued to audio surveillance. As Agent Savage and the confidential informant got out of the car and approached the residence, several individuals were standing in the front yard and one individual was seated on the porch. Agent Savage testified the informant referred to the individual they approached as "Slick" or Stick" (hereinafter referred to as Wakefield). While listening to the wire, Investigator Miller heard Wakefield referred to as "Tweet" and not "Stick." Agent Savage asked Wakefield about purchasing a "slab," which is one hundred dollars' worth of crack cocaine. After this discussion, Wakefield went into the house. When Wakefield returned, he and Agent Savage walked to the side of the house where he showed her several "slabs." Wakefield told Agent Savage to pick the best one. Agent Savage picked a "slab" and then returned to her car to get additional money. Wakefield and the confidential informant remained at the side

of the residence. When Agent Savage returned, she gave Wakefield five twenty-dollar bills from SLED funds. The money was never recovered.

Following the purchase, Agent Savage and the confidential informant returned to her car. By speaking over her wire, Agent Savage informed Agent Perry and Investigator Miller she had just made a purchase from a black male wearing a black and orange hat and a black Miami Hurricanes jacket with a hood on it. Because Agent Savage did not know the individual, she asked the surveillance team to ride by the scene. Approximately 30 to 45 seconds later, Agent Perry and Investigator Miller drove by 333 Marion Street. Based on Agent Savage's description of the suspect's clothing and his nickname "Tweet," Investigator Miller identified the individual as Everette Leon Wakefield. Investigator Miller had seen Wakefield approximately 50 times prior to November 12, and talked with him on several occasions at 333 Marion Street. Agent Perry also testified he saw a black male matching this description in the yard.

On cross-examination, Investigator Miller testified there was a large embankment with trees in the front yard of the 333 Marion Street residence. He testified the weather was clear on the day of the drug purchase. He stated he disagreed with Agent Perry's report which listed it had rained that day. Miller also acknowledged the Miami Hurricanes jacket was popular in 1992. He further testified he was positive the individual he saw was Everette Wakefield and not his brother, Nolan Wakefield; however, he could not indicate how he would be able to distinguish the two individuals.

At approximately 3:30 p.m. on November 12, Agent Savage and the confidential informant met with Agent Perry and Investigator Miller at a predetermined location. At that time, Agent Savage secured the crack cocaine she had purchased in an evidence bag and made notations on it. On the bag, Agent Savage wrote the date and time of the purchase, the county where she made the purchase, the individual who sold it to her, the residence where the purchase was made, the amount of drugs, the time she secured the evidence, and her initials. During this meeting, Investigator Miller informed Agent Savage that Wakefield was the individual who sold her the crack cocaine.

Approximately five days after the purchase, Agent Savage prepared her report of the incident. The report listed Wakefield's nickname as "Tweet," the nickname indicated by Investigator Miller. Shortly after making her report, Agent Savage identified Wakefield's photograph out of a series of photographs as the person from whom she had purchased crack cocaine on November 12, 1992.

SLED analysis of the substance purchased by Agent Savage revealed it was 1.48 grams of crack cocaine. Wakefield was not arrested until approximately June 10, 1993, because the officers wanted to continue the ongoing investigation.

At trial, Agent Savage and Investigator Miller both identified Wakefield as the person who had sold the crack cocaine to Agent Savage on November 12, 1992. Wakefield did not object to this in-court identification.

Officer Raymond Thomason, a police officer for the City of Greenwood Police Department, testified he had seen Wakefield more than 100 times at 333 Marion Street. He further testified he had seen Wakefield's vehicle parked in front of this address and had spoken with Wakefield at this location on more than one occasion. Officer Thomason also testified the Macedonia Baptist Church and its playground are located approximately one-half a block from 333 Marion Street. A map of the area indicated that the distance is 500 feet.

On cross-examination, Officer Thomason testified William Oscar Johnson was a friend of Wakefield's brother Nolan, who lived next door to the 333 Marion Street residence. He further testified Johnson's nickname is "Stick."

A vehicle tax receipt in Wakefield's name listed 333 Marion Street as his residence. A driver's license check also listed Wakefield's residence as this address.

## ISSUES

1. Did the trial judge properly deny Wakefield's motion for a directed verdict on the charge of distribution of crack cocaine?
2. Did the State meet its burden of proof beyond a reasonable doubt that Wakefield committed the crime of distributing crack cocaine?

## ARGUMENTS

Wakefield contends a drug sale occurred at 333 Marion Street on November 12, 1992; however, he asserts the individual responsible is open to question. *Citing Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed. (2d) 1247 (1968), Wakefield asserts Miller's drive-by identification was highly questionable and gave "rise to a very substantial likelihood of irreparable misidentification."

Wakefield challenges Investigator Miller's identification. Wakefield asserts Miller did not see the drug transaction, and only identified Wakefield based on racial characteristics and a Miami Hurricanes jacket, a popular article of clothing. Wakefield argues Investigator Miller could not distinguish him from his brother, Nolan Wakefield. Wakefield also contends the visibility of the front yard at 333 Marion Street was poor, and the weather conditions were rainy.

Wakefield also challenges Agent Savage's identification of him in the photographic lineup. Wakefield argues Agent Savage was not familiar with him or the other members of his family, particularly his brother, Nolan, who was close in age and appearance. Wakefield also argues Agent Savage testified the confidential informant referred to the individual as "Stick," but in her report Agent Savage noted Wakefield's nickname as "Tweet," based on investigator Miller's identification. Wakefield argues that based on the questionable identification of Wakefield, the State did not prove his guilt beyond a reasonable doubt.

The State asserts the trial judge properly denied Wakefield's motion for a directed verdict because its evidence reasonably tended to prove Wakefield was guilty of distribution of crack cocaine, or was such that his guilt for this offense could be fairly and logically deduced. First, the State argues Agent Savage positively identified Wakefield as the person from whom she purchased crack cocaine on November 12, 1992. She dealt with him for three or four minutes that afternoon, and she provided a detailed description of his clothing over the beeper wire. She also identified him in a photographic lineup. The State also argues that within less than one minute after the transaction, Agent Perry and Investigator Miller drove by the scene. Agent Perry saw a man matching Agent Savage's description of the individual. Investigator

Miller, who was familiar with Wakefield, recognized him. The State also argues other evidence established Wakefield resided at 333 Marion Street.

The State further asserts Wakefield's argument that the trial judge erred by denying his motion for a directed verdict because the State did not prove his guilt beyond a reasonable doubt was not presented to the trial judge. The State asserts that, consequently, this argument was not preserved for appeal. Alternatively, the State argues it was not required to prove each element beyond a reasonable doubt in order to withstand Wakefield's motion for a directed verdict.

## *LAW/ANALYSIS*

### A. *ERROR PRESERVATION*

Wakefield made no motion to suppress the in-court identification, which he alleges was based on questionable pretrial identification. Furthermore, Wakefield did not object to Agent Savage's and Investigator Miller's in-court identification. Wakefield was required to object to the in-court identification at trial to properly preserve this issue for appeal. *See State v. Sullivan,* 310 S.C. 311, 426 S.E. (2d) 766 (1993) (to preserve an issue for appellate review, appellant must object at the first opportunity); *Cook v. South Carolina Dep't of Highways and Pub. Transp.,* 309 S.C. 179, 420 S.E. (2d) 847 (1992) (issues not timely raised to and ruled upon by trial court will not be addressed on appeal).

### B. *MOTION FOR A DIRECTED VERDICT*

#### I. *STANDARD OF REVIEW*

In *State v. Prince,* 316 S.C. 57, 447 S.E. (2d) 177 (1993), the South Carolina Supreme Court articulated the standard to be utilized by the trial court when ruling on a directed verdict motion:

> It is well-established that, in ruling on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the State. The case should be submitted to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced.

*Prince,* 316 S.C. at 64, 447 S.E. (2d) at 181-82.

> *State v. Morgan,* 282 S.C. 409, 319 S.E. (2d) 335 (1984), instructs the trial judge in this procedure:

> Upon a motion for a directed verdict and judgment notwithstanding the verdict, the trial judge is concerned with the existence of evidence and not its weight. *State v. Spann,* 279 S.C. 399, 308 S.E. (2d) 518 (1983). The courts must view the evidence in the light most favorable to the State. *State v. Thompson,* 279 S.C. 405, 308 S.E. (2d) 364 (1983).

*Morgan,* 282 S.C. at 411, 319 S.E. (2d) at 336.

> "The trial judge should grant a directed verdict motion when the evidence merely raises a suspicion that the accused is guilty." *State v. Schrock,* 283 S.C. 129, 132, 322 S.E. (2d) 450, 452 (1984).

This standard applies regardless of whether the State relies upon direct or circumstantial evidence.

## II. *CRIMINAL CIRCUMSTANTIAL EVIDENCE RULE*

In *State v. Edwards,* 298 S.C. 272, 379 S.E. (2d) 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed. (2d) 196 (1989), our Supreme Court resolved a conflict in the case law as to the proper standard for ruling on directed verdict motions in circumstantial evidence cases. Prior to *Edwards,* uncertainty existed as to the criminal circumstantial evidence rule. *Edwards* explains with clarity the difference in the use of the rule *by the judge* as juxtaposed to the *jury.*

*Edwards* states:

Appellant, citing *State v. Manis,* 214 S.C. 99, 51 S.E. (2d) 370 (1949), contends that where, as here, the evidence is completely circumstantial his guilt must be proven to the "exclusion of every other reasonable hypothesis." In so contending, appellant is arguing the standard to be charged for use by the *jury* in its deliberation. Under this test, the jury may not convict unless:

> every circumstance relied upon by the State be proven beyond a reasonable doubt; and . . . all of the circumstances so proven be consistent with each other and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothe-

sis. It is not sufficient that they create a probability, though a strong one and if, assuming them to be true they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed.

*State v. Littlejohn*, 228 S.C. 324, 89 S.E. (2d) 924, 926 (1955).

The test set forth above is not, however, the test to be used by the *judge* in deciding a motion for a directed verdict where the evidence is circumstantial. In determining whether to send the case to the jury on circumstantial evidence, the proper standard to be applied by the judge is as follows:

[T]he judge is concerned with the existence or nonexistence of evidence, not its weight; and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury *if there by any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced.* [Emphasis added.]

*Littlejohn*, 89 S.E. (2d) at 926.

We recognize that a conflict has arisen in the case law of this State as to the proper standard for ruling on directed verdict motions in circumstantial evidence cases. Our holding today clarifies the proper standard to be used. To the extent that *State v. Manis* and its progeny are inconsistent with our opinion today, these cases are overruled.

*Edwards*, 298 S.C. at 275-76, 379 S.E (2d) at 889.

After *Edwards*, the Supreme Court was asked to adopt the federal standard in *State v. Stokes*, 299 S.C. 483, 386 S.E. (2d) 241 (1989):

Stokes argues that this Court should adopt the federal standard set forth in the case of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. (2d) 560 (1979). *Jackson* provides that the relevant question as to the sufficiency of evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard does not require excluding every hypothesis other than the

guilt of the accused beyond a reasonable doubt. Therefore, we find that the *Littlejohn* standard is consistent with federal law and reiterate that it is the proper standard to be used by a trial judge when ruling on a directed verdict motion when the State is relying exclusively on circumstantial evidence.

*Stokes*, 299 S.C. at 484, 386 S.E. (2d) at 241.

Here, the evidence is direct and circumstantial. Viewed in the light most favorable to the State, the evidence reasonably tends to prove Wakefield was guilty of distribution of crack cocaine and distribution of crack cocaine within a one-half mile radius of a playground, or was such that his guilt for these offenses could be fairly and logically deduced. There is no dispute concerning the actual sale of crack cocaine and that it occurred within a one-half mile radius of a playground. Furthermore, Agent Savage and Investigator Miller positively identified Wakefield as the individual who sold the crack cocaine. Any question concerning the identity of the seller involved the weight of the evidence. The trial judge properly submitted the case to the jury. Wakefield's convictions are

Affirmed.

CURETON and GOOLSBY, JJ., concur.