506 S.E.2d 523

**The STATE, Respondent,**

v.

**Bennie Darren MITCHELL, Appellant.**

No. 2885.

Court of Appeals of South Carolina.

Heard Sept. 3, 1998.

Decided Sept. 28, 1998.

Rehearing Denied Nov. 19, 1998.

Assistant Appellate Defender Robert M. Pachak, of Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General G. Robert DeLoach, II, all of Office of the Attorney General; and Solicitor W. Townes Jones, IV, Greenwood, for respondent.

GOOLSBY, Judge:

Bennie Mitchell was convicted of first-degree burglary and sentenced to twenty-five years imprisonment. He appeals, asserting the trial court erred in denying his motion for directed verdict because the state failed to prove he entered the dwelling. We reverse.

On September 7, 1995, Hugh Mathis went home for lunch and saw ten beers in his refrigerator. Upon returning home later, he noticed the beers were gone. After "grilling" his 20–year–old son and 16–year–old daughter about the missing beer, he concluded they were not responsible.

On September 13, Mathis found a piece of glass on the floor of a back room in his house, a room, which, including its windows, he recently had been painting. Suspicious, Mathis pushed the blinds back and saw a hole in the window pane and the window unlocked. He immediately checked his valuables and discovered two handguns missing. Mathis then contacted the police to report a burglary.

The next day, the investigating officer, Lt. Pickelsimer, found more broken glass on the floor. A thin blanket covered some of the glass particles. Pickelsimer found no glass outside the house. He did find a window screen, apparently part of a storm window, leaning up against the house directly under the broken window.

Pickelsimer transported the screen to his office and later that day lifted a latent thumbprint from the outside left middle portion of the screen. The print matched Mitchell's left thumbprint. Mitchell's prints, however, were not found on the window frame, glass, or sill, or anywhere inside the house. Neither the guns nor the beer were ever recovered.

At trial, the state presented evidence that Mitchell had been on the Mathis property at least twice, once to help Mathis's son move furniture and attend a social gathering in the house and another time to help the son unload lumber. Mathis further testified that Mitchell had not entered the room where the broken window and glass were found on either occasion.

The sole evidence presented to link Mitchell to the crime charged [1] was the thumbprint on the window screen. At the close of the state's case, Mitchell's counsel moved for a directed verdict of acquittal on the basis that the state had not proved Mitchell unlawfully entered the premises. This motion was denied. He renewed the motion at the close of the defense case. The motion was again denied.

---

**1.** S.C.Code Ann. Section 16–11–311(A) (Supp.1997) states that "[a] person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling . . . ."

Mitchell contends the trial court erred in denying his motion for directed verdict, arguing that the state failed to prove beyond a reasonable doubt that he unlawfully entered the Mathis residence. We agree.

The state's evidence against Mitchell was entirely circumstantial. In such cases, in order to survive a motion for directed verdict, our supreme court has held that the state must present *substantial* circumstantial evidence which "reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced . . . ." *State v. Long,* 325 S.C. 59, 62, 480 S.E.2d 62, 63 (1997) (quoting *State v. Littlejohn,* 228 S.C. 324, 329, 89 S.E.2d 924, 926 (1955)). Accordingly, the trial court should not deny the motion "where the evidence merely raises a suspicion that the accused is guilty." *Id.*

The question, then, is whether or not a fingerprint found outside a dwelling near the point of entry is "substantial" circumstantial evidence sufficient to permit a jury to receive the case. We think not. *See Hood v. Texas,* 860 S.W.2d 931 (Tex.App.1993) (holding a defendant's fingerprint found outside a burglarized home did not prove actual entry and could not itself establish commission of crime; instead, the fingerprint merely provided some evidence that the defendant was at the home at some time); *McCleskey v. Texas,* 924 S.W.2d 427 (Tex.App.1996) (finding a defendant's fingerprints on a broken window pane at the point of unauthorized entry insufficient to support a burglary conviction where no fingerprints belonging to the defendant were found inside the house, no evidence was presented that the defendant was in the area during the period the burglary occurred, and no stolen goods were found in the defendant's possession); *People v. Jacob,* 55 A.D.2d 961, 391 N.Y.S.2d 165 (N.Y.App.Div.1977) (holding a defendant's prints on louvers removed from the point of entry, though unexplained and uncontradicted, were not sufficient evidence to convict even where the window was only reachable by climbing over a twelve-foot wall and fence); *Monroe v. Delaware,* 652 A.2d 560 (1995) (reversing a burglary conviction when the only evidence placing the defendant at the scene was fingerprints on the outside surface of a glass shard from a door at the point of entry, and no identifiable prints belonging

to the defendant were found inside); *cf. State v. Gilliam*, 245 S.C. 311, 140 S.E.2d 480 (1965) (holding that circumstantial evidence of a broken pane of glass, an unlocked window latch, an absence of stamps from a desk, and the defendant's fingerprint on a piece of glass found outside beneath a broken window was insufficient to survive a motion for directed verdict in a housebreaking case).

On the other hand, cases upholding convictions on circumstantial fingerprint evidence are distinguishable.[2]

Here, the state's only evidence linking Mitchell to the alleged burglary was the single thumbprint found on the outside of the window screen. The state offered no evidence as to the age of the thumbprint.[3] In addition, the state's evidence did not disclose how the screen was removed, i.e., from the inside or out, or when it was last seen protecting the newly-painted window. Finally, we note that the screen was found directly beneath the window, located on the side of the Mathis house and easily accessible.

We therefore believe that Mitchell's thumbprint, viewed in the light most favorable to the state,[4] merely raises a suspicion as to his guilt. It is not substantial circumstantial evidence sufficient to prove Mitchell actually entered the Mathis residence through the window, and, without more, cannot support a conviction for burglary.

**REVERSED.**

HUFF and HOWARD, JJ., concur.

---

2.  *Compare Anderson v. Texas*, 672 S.W.2d 14 (Tex.App.1984) (intruder told the victim he entered her house through a window where his prints were later found); *Jones v. Texas*, 825 S.W.2d 529 (1992) (a window screen with defendant's fingerprint was found lying in mud outside the house and muddy footprints were found inside linking the screen to an entry of the house); *Arizona v. Coleman*, 147 Ariz. 578, 711 P.2d 1251 (Ariz.Ct.App.1985) (fingerprints were found on both sides of a piece of broken glass indicating an unauthorized entry during the breaking and removal of the glass); *Missouri v. Lane*, 497 S.W.2d 207 (Mo.Ct.App. 1973) (prints found on both sides of glass were consistent with an intruder picking out glass from a broken window pane).

3.  Indeed, the date and time of the alleged burglary itself were never established.

4.  *State v. Long*, 325 S.C. 59, 480 S.E.2d 62 (1997).