NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1257                                          Appeals Court

COMMONWEALTH  vs.  ERIC S. FRENCH.

No. 14-P-1257.

Hampden.     May 13, 2015. - October 9, 2015.

Present: Trainor, Agnes, & Blake, JJ.

Breaking and Entering. Larceny. Practice, Criminal, Required
    finding. Evidence, Fingerprints, Identification.
    Identification.

Complaint received and sworn to in the Springfield Division
of the District Court Department on September 27, 2013.

The case was heard by Christopher P. LoConto, J.

Joseph Visone for the defendant.
Alyson Yorlano, Assistant District Attorney, for the
Commonwealth.

BLAKE, J. Following a jury-waived trial, a judge of the

District Court found the defendant guilty of breaking and

entering in the daytime with the intent to commit a felony, and

larceny of property over $250. On appeal, the defendant argues

that absent additional evidence linking him to the crimes, a

latent fingerprint was legally insufficient to support the convictions. Because we conclude that the Commonwealth did, in fact, present further circumstantial evidence, we affirm the defendant's convictions.

Background. The undisputed facts are as follows. On August 30, 2013, Albano's Market in the city of Springfield closed at 6:00 P.M. When the proprietor left, the door was locked and all windows were in place. She returned early the following morning after she was informed that there was an open window at the store. Once at the store, both she and a police officer noted that a plexiglass windowpane had been removed from its frame and left leaning against the front door of the store. The empty window frame was about two and one-half feet wide, over six feet from the ground at its highest point, and located to the right of the store's front door. Beneath the window frame was a "little knee wall." The police officer also observed a milk crate in front of the same door, which he surmised the thief had used to gain entry into the store. Items inside the store had been knocked to the floor from their shelves. The proprietor reported that cigarettes were missing, the value of which was about $400 to $500, in addition to an undetermined amount of change.

The subsequent police investigation yielded latent fingerprints "around the sides" of the upper half of the

plexiglass windowpane, "like if you lifted it and put it to the side."[1] Springfield police Detective Juan Estrada analyzed the fingerprints, and testified that one was a match with a known sample provided by the defendant.[2] Estrada further testified that the age of a fingerprint cannot be determined when a crime scene is processed, but that fingerprints can deteriorate when exposed to weather. At trial, the defendant did not contest the manner by which the fingerprint evidence was secured and analyzed. Nor did he contest that the fingerprint was his.

Discussion. In reviewing the denial of a motion for a required finding of not guilty, we view the evidence in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). The Commonwealth may submit a case wholly on circumstantial evidence; inferences drawn from that evidence "need only be reasonable and possible," not "necessary or inescapable." Commonwealth v. Woods, 466 Mass. 707, 713 (2014), quoting from Commonwealth v. Merola, 405

------

[1] Although the officer equivocated somewhat on cross-examination regarding the orientation of the plexiglass in the frame, he affirmed on redirect that the fingerprints were recovered "up high" on the window, as the plexiglass was oriented in the frame before it was removed.

[2] Although there was some inconsistent testimony as to how many fingerprints were lifted from the windowpane by the police, Detective Estrada testified that he matched one print lifted from the windowpane with "the #9 ring finger of the defendant" by analyzing the defendant's previously obtained "standard fingerprint card." We refer to one fingerprint in this decision, but nothing turns on the exact number of prints.

Mass. 529, 533 (1989). "[T]he presence of a fingerprint at the scene of the crime is not by itself sufficient basis for submitting a case to a jury." Commonwealth v. Fazzino, 27 Mass. App. Ct. 485, 487 (1989). "The prosecution must couple the fingerprints with evidence which reasonably excludes the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed." Ibid. See Commonwealth v. Baptista, 32 Mass. App. Ct. 910, 911 (1992).

Such a hypothesis has reasonably been excluded in this case. In addition to the fingerprint, the circumstantial evidence depicts a crime scene that essentially speaks to how the burglar gained access to the market: by entry through a window, from which a pane had been removed, with a milk crate that could have been used to bolster the burglar into the market from the ground. As in Commonwealth v. Ye, 52 Mass. App. Ct. 390, 392-393 (2001), here the defendant was unknown to the victim of the crime and had no apparent connection to the store. The location of the fingerprint on the windowpane, the point of entry for the break-in, provides further circumstantial evidence. The print was located nearly six feet from the ground, on the perimeter of the pane, where someone would hold it in order to lift it out of its frame. Apart from removing the windowpane to gain entry into the market, there is no other reasonable, innocent explanation for the presence of the

defendant's fingerprint on that part of the window.[3]  Taking all of the circumstantial evidence together, a fact finder reasonably could have inferred that the defendant perpetrated the crime.  See Commonwealth v. LeClaire, 28 Mass. App. Ct. 932, 934 (1990); Commonwealth v. Baptista, supra at 911-912.[4]

Judgments affirmed.

---

[3] The dissent rests on the assumption that it is equally plausible that, based on the evidence presented, the real culprit left no fingerprints behind while the defendant innocently touched the plexiglass and impressed his fingerprint while the pane was resting against the door of the market overnight, or that he somehow climbed up and impressed it on the pane at an earlier time.  While these scenarios are within the realm of possibility, "[t]he Commonwealth need not 'exclude every reasonable hypothesis of innocence to prove its case, if the record viewed in its entirety supports 'a conclusion of guilt beyond a reasonable doubt.'"  Commonwealth v. Platt, 440 Mass. 396, 401 (2003), quoting from Commonwealth v. Merola, 405 Mass. 529, 533-534 (1989).

[4] The rationale of Baptista, supra, is not a bar to the result reached in this case.  In Baptista, this court held that one way to infer that the fingerprints were impressed at the time the crime was committed was the placement of the defendant's prints in an area that was not accessible to the public.  Id. at 911-912.  This rationale did not exclude the use of other, equally valid, methods of proof in cases such as the one here.

Nor are we bound by the holding in Commonwealth v. Morris, 422 Mass. 254, 257 (1996).  There, the defendant's fingerprint was found on a mask left near the crime scene, without sufficient further proof to tie him to the crime.  Here, the defendant's fingerprint was found in a distinct location on the plexiglass.  If the plexiglass remained intact in the window, it would not likely be touched by a member of the public, thereby further linking the defendant to the removal of the windowpane that served as the point of entry for the break-in.

AGNES, J. (dissenting). The majority opinion reasons that the Commonwealth's case consisted of not only latent fingerprint evidence, but also additional corroborative evidence that when taken together permitted the judge to conclude beyond a reasonable doubt that the defendant's fingerprint was impressed at the time the crime was committed. See Commonwealth v. Morris, 422 Mass. 254, 257 (1996); Commonwealth v. Baptista, 32 Mass. App. Ct. 910, 911 (1992). I read the record differently.

There is no evidence in this case linking the defendant to the break-in of the market other than a latent fingerprint found on a plexiglass windowpane. The evidence indicates that the latent fingerprint was not in a location on the windowpane that was inaccessible to the public prior to the break-in when the windowpane was in its frame. The police witnesses did not testify that the fingerprint was fresh, and they could not estimate how long the fingerprint had been on the windowpane. Furthermore, the evidence was that when the police arrived at the scene, the plexiglass windowpane was out of its frame, upright on the sidewalk and against the market's front door. Furthermore, the plexiglass windowpane was out of its frame and unattended for up to thirteen hours after the break-in occurred.

The only reported Massachusetts appellate decision in which latent fingerprint evidence alone was deemed sufficient to warrant a verdict of guilty beyond a reasonable doubt is

Commonwealth v. Baptista, supra.  The holding in Baptista,

followed in Commonwealth v. Morris, supra, is that in a case

such as this, fingerprint evidence alone is sufficient to

support a finding of guilt beyond a reasonable doubt only if the

fingerprint was found in an area generally inaccessible to the

public.  This is the national rule as well.[1]  Because this case

is substantially weaker than Baptista, and every other reported

appellate decision in Massachusetts involving fingerprint

evidence, I do not believe that the evidence was sufficient to

withstand the defendant's motion for a directed finding.[2]

Accordingly, I respectfully dissent.

   1.  Factual background.  In order to understand why this

case is different from and weaker than any other Massachusetts

case in which fingerprint evidence has been the sole or

---

   [1] "[W]hen fingerprints constitute the only identification
evidence, most jurisdictions require the prosecution to
establish beyond a reasonable doubt that the fingerprints in
fact were placed at the scene during the commission of the
crime."  Commonwealth v. LaCorte, 373 Mass. 700, 703 (1977).
Cases from other jurisdictions are collected in Monroe v. State,
652 A.2d 560, 564-565 (Del. 1995), and State v. Watson, 224 N.J.
Super. 354, 358-360 (App. Div. 1988).

   [2] In Baptista, we observed that "one of the defendant's
fingerprints was found inside a closed, locked Pepsi vending
machine.  In order to reach the coin box, the perpetrator had to
cut off a lock on the machine.  Because the interior of that
machine was not available to members of the public, the jury
could reasonably infer that the defendant's fingerprints were
left on the coin box at the time of the crime."  Commonwealth v.
Baptista, 32 Mass. App. Ct. at 911-912.  Accord Taylor v.
Stainer, 31 F.3d 907, 909-910 (9th Cir. 1994); State v. Lucca,
56 Wash. App. 597, 599-603 (1990).

principal evidence against the defendant, it is necessary to set forth the facts in somewhat greater detail. From the evidence presented at trial, the judge could have found the following facts. The owner of the market returned to the store during the early morning hours of August 31, 2013, as a result of a telephone call informing her that there was an empty window frame on the street side of the store.[3] When she arrived at the scene, she observed that a plexiglass pane from the window located on the right-hand side of the front door had been removed and placed on the ground, leaning against the door. The window served as the entry point by which the perpetrator entered the store and took change from the cash register and cigarettes estimated to be worth approximately $400 to $500.

Springfield police Officer Rooke arrived at the store at 7:20 A.M. the next morning and observed the empty window frame. When the windowpane was intact inside its frame, the distance from the sidewalk to the top of the window was over six feet, four inches. The windowpane that was removed was two and one-half feet wide. Inside the store, Officer Rooke went behind the counter where the cash register was located, and observed several items on the floor. The police did not dust for fingerprints anywhere inside the store.

---

[3] There is no evidence as to the precise time when the empty window frame was discovered.

Detective Jenkins also arrived at the scene sometime after 7:00 A.M. that morning and was informed that the windowpane had not been moved and had been leaning against the door when the police first arrived. Wearing gloves, Jenkins moved the windowpane so he could dust it for fingerprints. He assumed that the portion of the windowpane with a crack in it (depicted in a trial exhibit as the bottom area of the pane) was the bottom when it was in the window frame, but he was "not sure." Jenkins lifted latent fingerprints[4] from a location on the windowpane that would have been between five feet, eight inches, and six feet from the ground if the pane were in the window frame. More particularly, he testified on direct examination as follows:

Q: "Okay. And when that fingerprint powder -- when you applied it to the window, did you yield any results?"

A: "Yes."

Q: "And from where did you recover those results?"

A: "From the window -- from the plexiglass."

Q: "And where precisely in the plexiglass was it?"

A: "Around the sides -- like if you lifted it and put it to the side like that."

---

[4] "Fingerprints are left by the deposit of oil on contact between a surface and the friction ridges of a finger. Latent fingerprints are fingerprint impressions that are not visible to the naked eye without chemical enhancement. These latent print impressions are almost always partial and may be distorted due to less than full, static contact with the object and to debris covering or altering the latent impression." Commonwealth v. Patterson, 445 Mass. 626, 629 (2005).

Q: "Is that the upper half or the lower half of the
   plexiglass?"

A: "That was the upper half."

Q: "Alright.  Is that visible in the picture you have
   before you?"

A: "No."

It was not possible to determine the age of the fingerprints.  Detective Jenkins made photographic slides of the latent prints, which were submitted to the crime laboratory for identification.  Jenkins did not mark the area of the windowpane where he lifted the latent prints, nor did he take a photograph of the location.

Detective Juan Estrada, a member of the Springfield police crime scene identification division, testified without objection that one of the latent prints belonged to the defendant.[5]  He

_____

[5] This case was tried after the decisions in Commonwealth v. Patterson, supra, and Commonwealth v. Gambora, 457 Mass. 715 (2010), which addressed the reliability of latent fingerprint identification methods.  In Gambora, 457 Mass. at 727-728, the court indicated that expert witness testimony based on the "ACE-V methodology" of latent fingerprint identification was admissible, but expressed reservations about whether a fingerprint examiner should be permitted to testify to the "individualization" of a latent fingerprint, i.e., that based on a comparison between a latent fingerprint from a crime scene and a known fingerprint, the latent fingerprint came from the same source as the known fingerprint to the exclusion of all other persons.  See Commonwealth v. Wadlington, 467 Mass. 192, 203-206 (2014).  In Commonwealth v. Pytou Heang, 458 Mass. 827, 846-849 (2011), the Supreme Judicial Court established guidelines for forensic ballistics testimony that prohibit experts from offering an opinion about a match between a projectile or cartridge casing and a specific firearm to a degree of absolute

testified that he could not determine when the fingerprint had been impressed on the windowpane.  The defendant was unknown to the market's owner.  No witnesses saw the defendant or a person matching his description coming or going from the store at the approximate time the incident occurred, and none of the stolen merchandise was ever recovered or tied to him.

2.  Absence of corroborative evidence.  The majority maintain that this is not a case involving fingerprint evidence alone, but rather one in which the fingerprint evidence was corroborated by other circumstantial evidence linking the defendant to the crime.  Ante at __.  However, the majority

---

certainty.  See note to Mass. G. Evid. § 702, at 234 (2015) (certitude of expert witness opinion).

Because the defendant did not raise any issue with respect to the reliability of the methods used by Detective Estrada in comparing the latent fingerprints removed from the windowpane to the inked prints associated with the defendant and Estrada's testimony that there was a match, there is no need to address the issue.  In light of the decisions in Patterson, supra; Gambora, supra; Pytou Heang, supra, and other similar cases, it is important for prosecutors and defense counsel to appreciate the distinction between the admissibility of forensic expert witness testimony that is empirically based, but ultimately subjective in nature, and the expression by such experts of certainty or near certainty about their opinions.  See Commonwealth v. Greineder, 464 Mass. 580, 596 (2013), quoting from National Research Council, Strengthening Forensic Science in the United States:  A Path Forward, 7 (2009) ("[N]o forensic method has been rigorously shown to have the capacity to consistently, and with a high degree of certainty, demonstrate a connection between evidence and a specific individual or source").  See also Commonwealth v. Drayton, 473 Mass. ___ (2015) (expert witness testified without objection that latent fingerprint was "individualized or identified" with the defendant's print).

refers only to the location of the fingerprint, the absence of

any connection between the defendant and the market, and the

height of the windowpane when it was inside its frame.  Ante at

__.  This is not the type of corroborative evidence described in

prior cases involving fingerprint evidence.[6]  In cases of this

---

[6] See, e.g., Commonwealth v. Fazzino, 27 Mass. App. Ct. 485, 487 (1989) ("in addition to the fingerprints, there was evidence of [the defendant's] knowledge of the premises, knowledge where money was kept, special knowledge about a point of entry that was not apparent, skill with a blowtorch, and that the intruder harbored ill feelings against [the victim]"); Commonwealth v. LeClaire, 28 Mass. App. Ct. 932, 933 (1990) (in addition to defendant's thumbprint found around jagged hole in window leading into building, there were three other smudged prints on interior of same window and near thumbprint; expert testified that all prints had been impressed at same time and during commission of crime; and defendant was employed by business that occupied space inside that window, but had no authority or permission to be in that room); Commonwealth v. Hall, 32 Mass. App. Ct. 951, 952 (1992) (defendant's fingerprint was on doorknob of lavatory into which robber forced witness; court described additional circumstantial evidence as follows:  "[1] because the employee worked a twelve-hour shift that day and had been employed by the store since October, 1988, she would likely have recognized Hall if he was also a store employee, delivery person, or regular customer; [2] because the robber said he left the store to use a bathroom, he was unfamiliar with the fact that the establishment did have a bathroom; [3] because the robber apparently did not know that the store had a bathroom, it is reasonable to infer that he had no prior opportunity to place his fingerprint on the door handle to the bathroom which was only available to employees and delivery people; and [4] because the fingerprint lifted from the doorknob was not smudged, and since the bathroom was used regularly by all the store's employees, the print was likely put there by one of the last people to touch the knob"); Commonwealth v. Keaton, 36 Mass. App. Ct. 81, 85 (1994) (victim's testimony established that defendant's fingerprint on glass inside apartment was impressed during commission of crime); Commonwealth v. Ye, 52 Mass. App. Ct. 390, 392-393 (2001) (in addition to "very fresh" prints belonging to defendant found inside of door of "rarely used"

nature, in which the location of the fingerprint is the decisive factor, the object on which the fingerprint was found was inaccessible to anyone other than the perpetrator. That is not the case here because the windowpane was exposed to anyone passing by the market.[7]

3. Location of the latent fingerprint. The Commonwealth's theory at trial was that the fingerprint evidence was sufficient to permit an inference that the defendant was the perpetrator

---

cabinet in "isolated" area of basement of house defendant had never visited and from which $15,000 in cash, of which one-third was in form of new $100 bills, was stolen from safe, there were cellular telephone calls on day of burglary between defendant and another suspect with link to house, and financial transactions by defendant around time of robbery involving new $100 bills); Commonwealth v. Newell, 55 Mass. App. Ct. 119, 126-127 (2002) (fingerprint evidence combined with eyewitness identification evidence); Commonwealth v. Palmer, 59 Mass. App. Ct. 415, 419-421 (2003) (defendant's fingerprints were found on interior and exterior of truck used to escape scene of armed robbery; "[o]ne lift showed his fingers pointing downwards on the passenger door at the base of the passenger window frame. Another showed a fingerprint on the latch located in the interior of the truck by which the window opening into the bed of the truck could be made secure"; in addition, there was physical evidence inside the truck and records of telephone calls to defendant's girlfriend that linked defendant to crime). Contrast Commonwealth v. Estremera, 37 Mass. App. Ct. 923, 923-924 (1994) ("latent fingerprints on and above the outside door handle on the driver's side [of the vehicle], on the outside and inside of the window on the driver's side, and on the inside of the window on the passenger side" did not standing alone demonstrate that defendant possessed or was ever inside vehicle).

[7] Implicit in the reasoning of the majority is that whoever removed the windowpane from its frame and thereby gained entry to the market left a fingerprint on the plexiglass. There is no evidence to support such an assumption.

for three reasons:  it was recovered from a location that was the point of entry into the store, it was found in a location that was so high up on the windowpane that it could not have been the result of an inadvertent touching by a passerby, and it was in the location that would have been touched by someone who lifted the windowpane from its frame.  In particular, the Commonwealth points to testimony by Detective Jenkins that he found the latent fingerprint on the "sides [of the windowpane] -- like if you lifted it and put it to the side like that."[8]

This is the reasoning that underlies the result in Commonwealth v. Baptista, 32 Mass. App. Ct. at 911-912.  There, the defendant was convicted of breaking and entering a building on the basis of fingerprint evidence alone.  The defendant's fingerprints were described as "fresh," and were found in three different locations, namely, on a tool box inside the business, on the door to a cabinet from which a typewriter had been removed, and from the coin box of a soft drink vending machine

---

[8] In determining that this evidence was sufficient to withstand the defendant's motion for a directed finding of not guilty at the close of the Commonwealth's case, the judge described the testimony by Detective Jenkins as to the location of the latent print as involving a "demonstration."  Judges have discretion to permit a court room demonstration as long as it "sufficiently resembles the actual event so as to be fair and informative."  Commonwealth v. Perryman, 55 Mass. App. Ct. 187, 193-194 (2002), quoting from Terrio v. McDonough, 16 Mass. App. Ct. 163, 173 (1983).  The problem with what occurred in this case is that neither Jenkins nor the judge indicated with precision where on the windowpane the latent fingerprint was found.  The location in question was not marked or photographed.

that had been broken open. Id. at 911. The result we reached in Baptista did not turn on the number of locations where the defendant's fingerprints were located. Ibid. Instead, we concluded that "[b]ecause the interior of [the vending] machine was not available to members of the public, the jury could reasonably infer that the defendant's fingerprints were left on the coin box at the time of the crime." Id. at 911-912.[9]

This reasoning loses its force in the present case for two reasons. First, we do not know the precise location of the latent fingerprint identified as the defendant's on the windowpane because that was never marked or photographed. We do not know if the location of the fingerprint described by Detective Jenkins was in a location that was inaccessible to a passerby. We do know, however, that the plexiglass windowpane was not so high that a passerby could not stand on the ledge and touch the top of the window. Moreover, we do not have any evidence that the latent fingerprint was "fresh." Further, and more significantly, the windowpane that was removed from the window frame through which the perpetrator gained entry to the store became accessible to any passerby (in addition to the

---

[9] Accord State v. Thorpe, 188 Conn. 645, 648-650 (1982); Jones v. State, 156 Ga. App. 823, 824 (1980); State v. Watson, 224 N.J. Super. at 361. See United States v. Talbert, 710 F.2d 528, 531 (9th Cir. 1983); Hawkins v. United States, 329 A.2d 781, 782 (D.C. 1974); State v. Mitchell, 332 S.C. 619, 623 (1998).

perpetrator) after 6:00 P.M. on August 30.  In fact, it is unclear whether the police took control of the crime scene until the following morning.  According to the evidence, the owner of the store returned there "during the night."  No specific time is given, and there is no indication whether she or anyone else remained at the store until the police arrived.  Officer Rooke, who worked the day shift, testified that he responded to the scene immediately after the 7:00 A.M. roll call on August 31. Detective Jenkins arrived at the scene after 7:00 A.M. on August 31.  Thus, even if we assume that Jenkins discovered the latent fingerprint in a location on the windowpane that would not be accessible to a passerby when it was in its proper place inside the frame, the evidence that the windowpane was out of its frame and resting against the front door of the store for hours before the scene was under the control of the police means that "the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed" cannot reasonably be excluded.  Commonwealth v. Fazzino, 27 Mass. App. Ct. at 487. Cf. Commonwealth v. Salemme, 395 Mass. 594, 599-600 & n.6 (1985).[10]

---

[10] In Monroe v. State, 652 A.2d at 565-566, the Delaware Supreme Court concluded that the presence of eight latent fingerprints belonging to the defendant on a large piece of glass at the point of entry to a burglarized commercial building, coupled with testimony by police officers that the prints were in locations consistent with someone removing shards

The present case is also weaker than <u>Commonwealth</u> v. <u>Morris</u>, 422 Mass. at 257-260, where the Supreme Judicial Court concluded that the circumstantial evidence pointing to the defendant as one of a group of armed and masked intruders who entered an apartment and shot the victim to death was not sufficient to support the jury's verdict that the defendant was guilty of murder in the first degree and armed assault in a dwelling. In <u>Morris</u>, there was evidence that the intruders left one of the masks outside the apartment. <u>Id</u>. at 256. An expert witness testified that there was a thumbprint belonging to the defendant on that mask. <u>Ibid</u>. There also was additional evidence (1) that a vehicle involved in the crime resembled one owned by the defendant's mother, (2) linking the defendant and his residence to two other men who were found in a vehicle in possession of firearms and other items used in the commission of the crime, and (3) that the intruder wearing the mask resembled the defendant. <u>Id</u>. at 258-259. Notwithstanding the fingerprint evidence and other circumstantial evidence, the court concluded that the Commonwealth's evidence demonstrated that it was possible that the defendant was one of the intruders, but "does not, however, warrant such a conclusion beyond a reasonable

---

of glass from the door in order to gain entry and less likely to be touched by someone simply using the door handle to open the door, was not sufficient to support a finding that the fingerprints were impressed at the time the crime was committed. See <u>Townsley</u> v. <u>United States</u>, 236 A.2d 63, 65 (D.C. 1967).

doubt." Id. at 259. See Commonwealth v. Fancy, 349 Mass. 196, 200 (1965), quoting from Commonwealth v. O'Brien, 305 Mass. 393, 401 (1940) ("[I]f, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise and has no solid foundation in established facts, a verdict of guilty cannot stand").[11] The evidence deemed insufficient in Morris is even stronger than the evidence in this case.

4. Conclusion. Massachusetts law, and the law in a majority of jurisdictions, is that fingerprint evidence alone is not sufficient to support a finding of guilt beyond a reasonable doubt if the fingerprints are found in an area that is generally accessible to the public. In this case, the location where the fingerprint was found was accessible to the public both before and after the break-in, which precludes a jury from concluding beyond a reasonable doubt that the defendant's fingerprint was impressed at the time the crime was committed as required by Commonwealth v. Morris, supra, and numerous other Massachusetts decisions. Accordingly, the defendant's motion for a directed finding of not guilty should have been allowed.

---

[11] Accord Borum v. United States, 380 F.2d 595, 596-597 (D.C. Cir. 1967).