COMMONWEALTH vs. MATTHEW FAZZINO.

No. 88-P-218.

Barnstable. February 21, 1989. — June 22, 1989.

Present: KASS, WARNER, & FINE, JJ.

*Breaking and Entering. Evidence*, Fingerprints, Prior inconsistent statement. *Practice, Criminal*, Instructions to jury.

In a criminal case in which the defendant's fingerprints were found at the scene of a break-in, the prosecution presented sufficient further evidence at trial linking the defendant to the crime to warrant the submission of the case to the jury. [487-488] FINE, J., dissenting.

The judge at a criminal trial properly declined, in his discretion, to give an interim jury instruction at the close of the prosecution's case, and no issue was preserved for appellate review with respect to jury instructions given at the close of all the evidence. [488]

The judge at a criminal jury trial in a District Court properly excluded, in his discretion, a segment of the tape recording of a witness's testimony at the bench trial, offered by the defendant as a prior inconsistent statement, where the prior statement was not plainly inconsistent and did not concern any central, disputed issue. [488-489]

COMPLAINT received and sworn to in the Barnstable Division of the District Court Department on October 8, 1986.

On appeal to the jury session the case was tried before *Roger B. Champagne*, J.

*Chrystal Murray*, ·Committee for Public Counsel Services, for the defendant.

*Thomas M. Yonce*, Assistant District Attorney, for the Commonwealth.

KASS, J. At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty. His fingerprint had been found in two places on a file box at the scene of a breaking and entry, but the defendant argues that those prints were the sole evidence tying him to the crime.

The prosecution was bound to rebut the possibility that the fingerprints had been placed on the box at a time other than that of the occurrence of the crime. See *Commonwealth* v. *LaCorte*, 373 Mass. 700, 702-703 (1977); *Commonwealth* v. *Clark*, 378 Mass. 392, 405-406 (1979).

The motion for a required finding of not guilty was denied, and a jury of· six returned a verdict of guilty of breaking and entering in the nighttime, with intent to commit a felony. We summarize what the jury could have found, viewing the evidence favorably to the Commonwealth.

Between closing time at 9:00 P.M., on Saturday, September 13, 1986, and 8:30 A.M., the following day, there had been a break, vandalism, and a theft at Bill's Repair Shop in Falmouth. Entry had occurred through a boarded-up window in an upstairs office. That window was at the rear of the building and could not be seen from ground level, permitting the inference that whoever had broken through at that point had some prior knowledge of the building, its layout, and its openings.

The boarded-up window gave access to the upstairs "private" office of the proprietor of the garage, William Ferreira. In that space, the intruder had opened desk drawers and file cabinets, and scattered papers and trophies. Downstairs there was another office in which the intruder had burned his way into a safe with a blowtorch. "Stuff" was scattered on the floor and a desk. A small amount of money, some tools, and some trophies were missing.

Ferreira was in the habit of leaving about $45 in cash hidden in a container in his private office to "open with" in the morning. It could be inferred that the intruder knew about such a stash. Fazzino had worked for Ferreira for two years and was familiar with the layout and operation of the garage. So it was that Fazzino would have known that Ferreira occasionally stored the day's receipts in the safe. Whoever had broken into the safe was handy with a blowtorch and Fazzino had developed that skill while working for Ferreira.

The file box upon which Fazzino's fingerprints were found was not such as would have been casually handled while Fazzino was visiting with Ferreira, as he did frequently. Normally,

the box was located against a wall on a corner of Ferreira's desk. A doll labelled "Coach" customarily sat on top of the box. One could infer, therefore, that Fazzino's fingerprints could have been placed on the box only by his actually moving it. Ferreira periodically had his office cleaned and dusted, and the box had been dusted about a week before the break-in occurred. The fingerprints recovered from the rear and bottom of the box were, according to an expert witness, relatively fresh. Fazzino had been to see Ferreira on Saturday morning, and the break occurred late that night or in the very early hours of Sunday because when Ferreira came in Sunday morning the torches were cold. The Saturday morning interview between Fazzino and Ferreira had concerned the former's coming back to work at Bill's Repair Shop. Ferreira had turned Fazzino down and it could be inferred that Fazzino was in a vengeful frame of mind the following night. Fazzino denied having been fired by Ferreira or that the conversation that Saturday had been in any way unpleasant.

In sum, in addition to the fingerprints, there was evidence of knowledge of the premises, knowledge where money was kept, special knowledge about a point of entry that was not apparent, skill with a blowtorch, and that the intruder harbored ill feelings against Ferreira. The location of Fazzino's fingerprints on the box were consistent with his having picked it up. Usually the box was not moved except for cleaning. There was testimony by Fazzino about his relationship to Ferreira which the jury could have been disposed to discredit.

1. *The fingerprint evidence.* We begin with the general principle that the presence of a fingerprint at the scene of the crime is not by itself a sufficient basis for submitting a case to a jury. *Commonwealth* v. *LaCorte*, 373 Mass. at 703. *Commonwealth* v. *Clark*, 378 Mass. at 404. The prosecution must couple the fingerprints with evidence which reasonably excludes the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed. It may be argued that the side of the tell-tale box which was against the wall was seldom cleaned and the fingerprints were from some occasion long ago and never disturbed. One can

press, on behalf of the defendant, the implausibility of his burning open a safe in which Ferreira only occasionally put money. The intruder left behind valuable inspection stickers. Fazzino often brought cars over to Ferreira's place for inspection and knew their value. Does this mean he would not have passed up the inspection stickers, or does it mean that, because he knew the stickers had numbers by which they could be traced, he was too smart to take dangerous goods? That Fazzino was able to use a torch is not overpowering; many persons possess that skill.

As is apparent from this recitation, the evidence was conflicting. The case against Fazzino was far from overwhelming, but there was evidence which, when coupled with the fingerprints, rationally linked him to the crime. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). In such circumstances an appellate court is bound to resist acting as an additional juror. Compare *Commonwealth* v. *Salemme*, 395 Mass. 594, 599-600 (1985), in which the defendant's thumbprint established his presence at the scene of the crime but not that he fired the fatal shot.

2. *Jury instruction.* At the close of the government's case, the defendant asked the judge to instruct the jury — at that time — that the fingerprint evidence "was admitted to show only that Matthew Fazzino touched the box at some time. It does not necessarily show that Matthew Fazzino touched the box during the time that the alleged crimes were committed." The judge declined the proposal of an interim instruction and suggested the point be raised again at the jury charge conference. If there was a charge conference, the record does not disclose it. Defense counsel made no mention of the point at the conclusion of the judge's jury charge. Thus, the point may be regarded as waived. Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). In any event, the judge would have been acting within his discretion in declining to give the instruction requested. *Commonwealth* v. *Wills*, 398 Mass. 768, 778-779 (1986).

3. *Prior inconsistent statement.* Ferreira testified with assurance at the jury trial that he had met with Fazzino on the day before the break-in, and with clarity that he did not see Fazzino

touching things in the office. During cross-examination, Ferreira denied ever saying at the bench trial that he could not remember whether Fazzino had been in his shop that day. After Ferreira had been excused as a witness and after the close of the Commonwealth's evidence, the defense sought to introduce, as a prior inconsistent statement, a segment of the tape recording of the bench trial, which contained the following exchange:

> [Prosecutor]: Mr. Ferreira, the defendant stated that he was in your office that day, is that correct?
> [Ferreira]: He was in and out several times. I don't know if he was in that Saturday or not, more than likely — I mean I still consider him a friend."

The prior statement was not plainly inconsistent; it was somewhat more equivocal in tone than the certainty on the point at the jury trial. In such circumstances a trial judge has broad discretion to admit or exclude the prior statement. *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982). See also *Commonwealth* v. *Beauregard*, 25 Mass. App. Ct. 983, 984 (1988); *Commonwealth* v. *Smith*, 26 Mass. App. Ct. 673, 679-680 (1988). Contrast *Commonwealth* v. *Basch*, 386 Mass. 620, 623 (1982), in which the statement was plainly contradictory.

The judge, in exercising his discretion, could also take into account that the purportedly contradictory statement was being offered after the witness was no longer on the stand and that Fazzino's presence in Ferreira's shop on Saturday morning was not a disputed issue at the trial, i.e., Fazzino had testified he was there. Thus, if there was an inconsistency, it was not about a central, disputed issue. See *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 519 (1972); *Commonwealth*, v. *Dougan*, 23 Mass. App. Ct. 1012, 1014 (1987). On the direct issue, whether the defendant had been close enough to the desk to touch the box, Ferreira never deviated from a single version, namely, that the defendant had not been close enough.

*Judgment affirmed.*

FINE, J. (dissenting). In my view, it was error for the trial judge to deny the defendant's motion for a required finding of not guilty. No rational trier of fact could have been convinced of the defendant's guilt beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979).

The evidence, viewed in the light most favorable to the Commonwealth, suggested at most that it was possible that the defendant was the individual who broke into Ferreira's business. Fingerprint evidence, supposedly, linked him to the crime. According to the undisputed testimony of Commonwealth witnesses, however, the defendant had been a continuous and frequent visitor to Ferreira's business establishment, with access to various parts of the premises. It is not surprising, therefore, that, during the course of the investigation, a set of his fingerprints would be lifted from a metal box which normally sat on top of a desk in Ferreira's office. Nothing of value was kept in the box. The majority stretches to find, in addition to the weak inference suggested by the fingerprints, proof of a motive for the crime. The evidence at best is neutral, however, as to motive. True, Ferreira had fired the defendant ten months before the break-in. However, there was no evidence that the defendant and Ferreira had not remained on friendly terms throughout the period until the break-in. Ferreira had arranged for the defendant to be employed in a similar business owned by Ferreira's uncle, and, in the course of that employment the defendant frequently brought cars to Ferreira's repair shop. Moreover, Ferreira was holding out to the defendant the prospect of employment in the future.

Given the weaknesses in the Commonwealth's case, the evidence suggestive of the defendant's innocence assumes significance. It seems unlikely that the defendant would have expended the effort required to open the empty safe with a blowtorch, knowing, as Ferreira indicated the defendant did, that it was not Ferreira's custom to leave money in the safe overnight.