## COMMONWEALTH *vs.* WEI H. YE.

No. 00-P-70.

Middlesex. May 10, 2001. - August 27, 2001.

Present: LENK, GELINAS, & KAFKER, JJ.

*Evidence,* Fingerprints, Admissions and confessions. *Practice, Criminal,* Instructions to jury, Assistance of counsel. *Constitutional Law,* Assistance of counsel, Admissions and confessions. *Search and Seizure,* Expectation of privacy.

In a criminal case in which the defendant's fingerprints were found at the scene of the crime, the prosecution presented sufficient further evidence at trial to warrant the defendant's convictions of certain crimes committed therein, where the evidence, taken together, reasonably excluded the hypothesis that the fingerprints were impressed at a time other than when the crimes were being committed. [391-393]

At a criminal trial in which the defendant's fingerprints were found at the crime scene, there was no ineffective assistance in counsel's failure to request, and no error in the judge's failure to give, instructions specifically addressing fingerprint evidence, where there was no evidence that the defendant was at the crime scene on other occasions, and where there was other circumstantial evidence connecting the defendant to the crime. [393-394]

At a criminal trial, the defendant's claims that the judge erred in admitting evidence seized from the defendant's workplace, and that counsel's failure to file a motion to suppress such evidence constituted ineffective assistance, were without merit, given the evidence's limited probative value. [394-395]

At a criminal trial, a Commonwealth witness's brief, nonresponsive comment on the defendant's postarrest silence did not create a substantial risk of a miscarriage of justice, where the comment was inadvertently elicited, and where the prosecutor made no reference to the defendant's silence during the remainder of the trial. [395-397]

INDICTMENTS found and returned in the Superior Court Department on January 29, 1998.

The cases were tried before *Charles T. Spurlock,* J.

*Stephen Hrones* for the defendant.

*Peter D'Angelo,* Assistant District Attorney (*Eric R. Barber-*

*Mingo*, Assistant District Attorney, with him) for the Commonwealth.

KAFKER, J. Masquerading as trick or treaters with painted faces and costumes, four men made their way into the Lexington home of Sookyun Rha on Halloween night, 1997. Once inside, some of the intruders ransacked the house looking for money while others held Rha and her ten year old twin sons at gunpoint. The intruders eventually discovered the key to the Rhas' safe and took $15,000 from it before binding the victims' legs, arms, and mouths with duct tape and dumping them in the basement of the house. Fingerprints of the defendant, Wei H. Ye, were discovered on the inside of a door of a traditional Korean cabinet in the basement.

Following a jury trial in Middlesex Superior Court in October, 1998, the defendant was convicted of home invasion, armed robbery while masked, three counts of kidnaping, three counts of assault by means of a dangerous weapon, and three counts of assault and battery.

On appeal, the defendant argues that his convictions should be reversed and his case remanded for a new trial due to insufficient evidence that his fingerprints were placed on the Korean cabinet on the night of the home invasion. He also argues that the judge erred in not instructing the jury on fingerprint evidence, in allowing the introduction of latex gloves and duct tape from his workplace toolbox, and in permitting testimony regarding his postarrest silence. He further asserts ineffective assistance of counsel based on his counsel's failure to request the fingerprint instruction, to file a motion to suppress the gloves and the tape, and to object to postarrest testimony. He also raises several other issues which are summarily addressed below. We conclude that there was no error, and that counsel was not ineffective. We, therefore, affirm the convictions.

1. *Sufficiency of the evidence.* Relying on *Commonwealth* v. *Morris*, 422 Mass. 254 (1996), the defendant argues that the Commonwealth failed to prove beyond a reasonable doubt that his fingerprints were left on the Korean cabinet during the commission of the crime. Our analysis begins "with the general principle that the presence of a fingerprint at the scene of the crime is not by itself a sufficient basis for submitting a case to a

jury. The prosecution must couple the fingerprints with evidence which reasonably excludes the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed." *Commonwealth* v. *Fazzino*, 27 Mass. App. Ct. 485, 487 (1989) (citations omitted). See *Commonwealth* v. *Baptista*, 32 Mass. App. Ct. 910, 911 (1992).

We "review the evidence in the light most favorable to the Commonwealth, along with reasonable inferences therefrom," *Commonwealth* v. *Morris*, 422 Mass at 256, and begin with the fingerprints themselves. The police found "very good quality" fingerprints matching the defendant's on the inside of a door of the Korean cabinet.[1] The police officer who detected and lifted the prints described them as "very fresh" and the fingerprint expert described their "very good quality" as allowing "the impression that this may be a very recent print . . . ." The cabinet had been given to Rha by her family. It stood in the basement of the house and as the family's "traditional one" was rarely opened by the Rhas. Rha testified that the cabinet door, which had been closed, was left open by the robbers. The defendant had never visited the Rhas' house prior to Halloween night, 1997. Visitors to the house were few and service personnel were monitored by Rha.

In addition to the fingerprints on the door of the cabinet, other circumstantial evidence linked the defendant to the crime. Cell phone records for the day and evening of the robbery included at least three calls connecting the defendant's family to Hester Yip. Yip was the former cashier at a successful restaurant owned by the prior owner of Rhas' home.[2] The Commonwealth's theory was that the defendant and his cohorts, in collaboration with the former cashier, located and planned to

---

[1] The fingerprints on the door were "positively identified" as the left middle and left index finger of the defendant.

[2] Yip testified that she worked for Larry Hsieh, the prior owner of Rhas' home, at the Takeshima Restaurant between 1993 and 1996. Hsieh testified that Yip was unhappy about her compensation. He also testified that she knew how much money the restaurant was making and that he took cash home with him. He further testified that some of his employees knew where he lived when he lived in Lexington, although Yip denied such knowledge. Rha testified to having lived in the house formerly occupied by Hsieh for more than two years immediately preceding the October, 1998, trial.

rob the house, unaware that it had been sold, expecting to find large sums of cash there from the restaurant business.[3]

We conclude that the Commonwealth has coupled the fingerprint evidence with other evidence which reasonably excludes the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed because (1) very good quality, "fresh" fingerprints were found on the Korean cabinet door opened by the robbers, (2) the cabinet was rarely used and was isolated in a home with few visitors, (3) the defendant had never visited the home, and (4) other circumstantial evidence connected the defendant to the crime. See *Commonwealth* v. *LeClaire*, 28 Mass. App. Ct. 932, 933 (1990); *Commonwealth* v. *Hall*, 32 Mass. App. Ct. 951, 952 (1992); *Commonwealth* v. *Baptista*, 32 Mass. App. Ct. at 911-912.

The defendant's reliance on *Commonwealth* v. *Morris*, 422 Mass. 254, is misplaced. In that case, the defendant's prints were discovered on a mask left at the scene of the murder by one of the intruders. There was no other evidence that the defendant participated in the crime. The mask, unlike the cabinet here, was brought to the crime scene from another location. Because the mask was portable and the defendant in *Morris* had prior contacts with the others arrested separately for the crime, it could be inferred that he had other opportunities to touch the mask. As the court stated, "the [co-defendants] may have simply used the defendant's home as a base of operations." *Id.* at 259. Here, in contrast, the Commonwealth did satisfy its obligation to "rebut the possibility that the fingerprints had been placed [at the scene] at a time other than that of the occurrence of the crime." *Commonwealth* v. *Baptista*, 32 Mass. App. Ct. at 911, quoting from *Commonwealth* v. *Fazzino*, 27 Mass. App. Ct. at 486.

2. *Fingerprint instruction.* No jury instructions specifically addressing fingerprint evidence were requested or given. The

---

[3]Circumstantial evidence concerning cash was introduced at trial. The defendant gave his brother $2,500 around the time of the robbery. Nine new $100 bills were recovered from the defendant's brother's room. Approximately one-third of the $15,000 stolen from the safe was in new $100 bills. On November 2, the defendant gambled at the Foxwoods casino using at least $2,200. The casino records also indicate, however, that the defendant had won $4,000 gambling two weeks earlier.

defendant claims the judge erred in failing to give such instructions, and counsel was ineffective for not requesting them. We conclude that there has been no error or ineffective assistance. The defendant relies on a footnote in *Commonwealth* v. *LaCorte*, 373 Mass. 700, 702-703 n.1 (1977), which states that "since the defendant may have been in the [the murder victim's] apartment on other occasions, the defendant might have been entitled to a limiting instruction emphasizing that the fingerprints were admitted in evidence to show only that the defendant was present there at some time." The court continued, however, that "because of other circumstantial evidence in this case, the judge might well have ruled that the defendant was not entitled to such an instruction." *Ibid.*

In the instant case, there is no evidence that the defendant was in the Rhas' home on other occasions. Furthermore, there is other circumstantial evidence connecting the defendant to the crime. Although *LaCorte* suggested that the defendant may be entitled to an instruction in certain circumstances, no such circumstances have been found in subsequent cases in which the issue was raised. *Commonwealth* v. *Wills*, 398 Mass. 768, 779 (1986); *Commonwealth* v. *Rock*, 429 Mass. 609, 618 (1999); *Commonwealth* v. *Fazzino*, 27 Mass. App. Ct. at 488. Similarly, these circumstances are not present in the case before us.

Finally, we think it plain that the judge's instructions on reasonable doubt, circumstantial evidence, and the burden of proof, taken in combination with the line of defense inquiry designed to raise doubts concerning when and where the fingerprints were impressed, appropriately guided the jury on the fingerprint evidence.

3. *Glove and tape evidence.* The latex gloves[4] and a roll of duct tape seized from the defendant's workplace toolbox were introduced in evidence without an objection. The defendant asserts that the judge erred in admitting this evidence and that defense counsel's failure to file a motion to suppress constituted ineffective assistance.

At trial, defense counsel cross-examined the Commonwealth's witnesses on the subject effectively, and was able to show,

---

[4]Two or three of the four intruders were wearing gloves.

particularly in regard to the latex gloves, that they had little bearing on the case. It was not clear what type of gloves various intruders wore. In addition, there was uncontested evidence that latex gloves were found in the defendant's apartment and in the van he used on the night of the crime. Moreover, latex gloves were also found in baskets throughout the defendant's workplace in areas where the defendant had no reasonable expectation of privacy, thereby rendering a possible motion to suppress the gloves from the toolbox even less meaningful and the challenged evidence merely cumulative. See *Commonwealth* v. *Thomas*, 429 Mass. 146, 159-160 (1999). The Commonwealth's introduction of the roll of duct tape likewise served little purpose. While the tape found in the defendant's toolbox was of the same type as that used by the intruders, it was acknowledged by the prosecution that "you can get this tape anywhere." Given the limited probative value of the gloves and the tape, trial counsel's failure to file a motion to suppress may have been a tactical decision. *Commonwealth* v. *McLeod*, 39 Mass. App. Ct. 461, 462 (1995).

The defendant cites cases recognizing a reasonable expectation of privacy in certain closed containers in support of his contention that he had a reasonable expectation of privacy in his toolbox and, therefore, that a motion to suppress would have been successful. There was evidence in the record that the defendant's employer showed the officer around the company and gave him the gloves from the defendant's toolbox. See *Commonwealth* v. *Welch*, 420 Mass. 646, 653-654 (1995). To the extent the defendant implies that the toolbox was closed and that he controlled the toolbox, these facts are not in the record before us, and this part of the claim is not suitable for analysis on direct appeal. *Commonwealth* v. *McLeod*, 39 Mass. App. Ct. at 462 n.2.

4. *Police testimony on defendant's postarrest silence.* During direct examination by the prosecutor, the detective who investigated the robbery and was present during the defendant's booking commented on the defendant's postarrest silence.[5] Defense counsel did not object or move to strike the nonresponsive comment. Although the detective's statement was the only

---

[5]The exchange proceeded as follows:

reference made at trial to the defendant's postarrest silence, and was apparently elicited inadvertently, the defendant, citing the factors laid out in *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694 (1983), claims that the comment on his silence created a substantial risk of a miscarriage of justice. The Commonwealth argues that the remark resulted in no prejudice to the defendant because it was made in the context of an inquiry into his ability to speak English.[6] While this may be so, the detective's comment did improperly reference the defendant's silence. By poorly handling a simple question, the Commonwealth raised constitutional issues that were avoidable.[7]

A defendant's postarrest silence cannot be used against him. *Commonwealth* v. *Waite*, 422 Mass. 792, 797 (1996). Here, the prosecutor made no reference during the remainder of the trial to the defendant's silence. Contrast *Commonwealth* v. *Mahdi*, 388 Mass. at 694. The exchange presented in this case is akin to that in *Waite*, in which the prosecutor asked a testifying police officer about the defendant's physical responses to certain police commands, and *the witness unexpectedly commented on the defendant's silence. Waite*, 422 Mass. at 799 n.5. The court found that "[s]uch testimony regarding silence is not 'used' against a defendant because it is not logically linked up with any contention or inference that harms the defendant." *Ibid.* In this case, we likewise conclude that there was no prohibited use

---

*Q.* "Were you there during the booking process?"

*A.* "Yes, I was."

*Q.* "And did you or anyone speak to Mr. Ye?"

*A.* *"He didn't want to answer"* (emphasis added).

*Q.* "Did you say any words to Mr. Ye?"

*A.* (No verbal response.)

*Q.* "Let me ask it another way, Detective, did Mr. Ye speak in English?"

*A.* "Yes, he did."

[6]Rha testified that the intruders spoke English well.

[7]No curative instruction was requested or given, perhaps to avoid highlighting the passing reference.

of postarrest silence. See *Commonwealth* v. *Habarek*, 402 Mass. 105, 110 (1988).

5. *Remaining claims.* The defendant's remaining contentions, which concern comments made by the judge during the trial and other shortcomings of the defense counsel, similarly fail. The judge's remark about the ability of people "born here" to speak English, while unnecessary, was innocuous. His decision to cut off repetitive questioning regarding why police did not show Rha the photo array including the defendant was also within his discretion. See *Commonwealth* v. *Gagnon*, 408 Mass. 185, 192 (1990). We also reject the argument that, when the judge interjected that defense counsel's question — "you can't connect any of the items taken from [defendant's] home to the robbery?" — presented an "ultimate decision for the jury to make," he created a substantial risk of a miscarriage of justice. Even if this were error, it did not create a substantial risk of a miscarriage of justice.

That defense counsel did not make an opening argument appears to have been a tactical decision and does not rise to the level of ineffective assistance of counsel based on the record before this court. We also note that the argument on that issue does not comply with Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975). Similarly unavailing is the contention that trial counsel was ineffective for failing to object to the prosecutor's question: "Didn't you come and visit Mr. Ye soon after he was arrested while he was being held in this building?" The question was proper because it was part of an inquiry about whether the witness knew the defendant by his correct name in light of her equivocation on the subject.

*Judgments affirmed.*