NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12012

COMMONWEALTH  vs.  ERIC S. FRENCH.


February 14, 2017.


Breaking and Entering.  Larceny.  Practice, Criminal, Required
    finding.  Evidence, Fingerprints, Identification.
    Identification.


    Following a jury-waived trial in the District Court, a
judge found the defendant, Eric S. French, guilty of breaking
and entering in the daytime with the intent to commit a felony,
in violation of G. L. c. 266, § 18, and larceny of property over
$250, in violation of G. L. c. 266, § 30 (1).  The defendant
appealed, arguing that the evidence was insufficient to support
the convictions.[1]  The Appeals Court, in a divided decision,
affirmed the judgments.  See Commonwealth v. French, 88 Mass.
App. Ct. 477 (2015).  The case is now before this court on
further appellate review.  Because we conclude that the evidence
was not sufficient to find, beyond a reasonable doubt, that the
defendant committed the crimes charged, we reverse.

    Background.  The convictions stem from a break-in and
robbery that occurred at a market in Springfield in August,
2013.  At trial, one of the proprietors of the store testified
that she closed the store at 6 P.M. on August 30.  She returned
to the store "during the night" after being notified of a break-
in.  When she arrived she saw that "[s]omebody had broken in on
the side window and taken the panel out and climbed in."  She
also testified that approximately $400 to $500 worth of
cigarettes had been stolen.

_____

    [1] At the close of the Commonwealth's case, the defendant
filed a motion for a required finding of not guilty, which the
trial judge denied.

Several Springfield police officers also testified. Officer Eugene Rooke responded to a call to go to the market on the morning of August 31, and arrived there with his partner at approximately 7:20 A.M. When they arrived, they spoke with two men who lived next door to the store and who had alerted the police that a front window to the store was "missing." Officer Rooke saw that the plexiglass window pane from the window located to the right of the front door had been removed and was set against the door. Photographs entered as exhibits at trial show the plexiglass leaning against the front door, next to the window frame from which it had been removed.

Officer Rooke estimated that when the plexiglass was intact, inside the window frame, the top of it was more than six feet, four inches from the ground. Additionally, he saw a milk crate on the ground nearby that he thought the perpetrator may have stood on to gain entry to the store (through the open window). Photographs show the milk crate on the ground, next to the plexiglass. Inside the store, Officer Rooke observed numerous items that would normally be on shelves located on the floor instead.

Detective Gifford Jenkins also responded to the scene after receiving a call to do so on the morning of August 31, at around 7 A.M. In the course of collecting evidence, Detective Jenkins recovered a latent fingerprint from the plexiglass. He testified that, on the basis of how he thought the plexiglass would sit in the window frame, the fingerprint was recovered from a portion of the plexiglass that was "up high." If the plexiglass were sitting in the window frame as described by Detective Jenkins, the location of the fingerprint would have been, in his estimation, five feet, eight inches to six feet from the ground. When asked on cross-examination if he could identify which part of the plexiglass was the top half and which was the bottom half, he indicated that the "bottom" of the plexiglass, as he found it at the scene (that is, removed from the frame and leaning against the store's front door), had a crack. When asked whether he "kn[e]w . . . for certain" which was the top of the plexiglass and which was the bottom, he responded "I'm just saying. I'm not sure. I mean that's what it looks like to me." He also testified that he took photographs inside the market but did not further dust for fingerprints.

Finally, Detective Juan Estrada, who is trained in fingerprint analysis, testified without objection that the

latent fingerprint recovered from the plexiglass matched a known sample from the defendant.  He also testified that a fingerprint cannot be dated and can remain on a surface for a long period of time.[2]

Discussion.  Where, as here, a defendant's fingerprint at a crime scene constitutes the only identification evidence, "the prosecution must prove beyond a reasonable doubt that the fingerprint was placed there during the crime."  Commonwealth v. Morris, 422 Mass. 254, 257 (1996), citing Commonwealth v. LaCorte, 373 Mass. 700, 703 (1977).  "The prosecution must couple the fingerprint[] with evidence which reasonably excludes the hypothesis that the fingerprint[] w[as] impressed at a time other than when the crime was being committed."  Commonwealth v. Fazzino, 27 Mass. App. Ct. 485, 487 (1989).  See Commonwealth v. Baptista, 32 Mass. App. Ct. 910, 911 (1992).  Even viewing the evidence in the light most favorable to the Commonwealth, as we must, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the Commonwealth has not done that here.

In prior cases where a fingerprint was the only identification evidence, and thus a decisive factor in convicting the defendant, other evidence corroborated finding that the fingerprint was placed during the crime.  In Baptista, 32 Mass. App. Ct. at 911, for example, one of the defendant's fingerprints "was found inside a closed, locked Pepsi vending machine," the interior of which "was not available to members of the public."  On this basis, the jury "could reasonably infer that the defendant's fingerprints were left . . . at the time of the crime."  Id. at 911-912.  See, e.g., Commonwealth v. Wei Ye, 52 Mass. App. Ct. 390, 392-393 (2001) (fingerprint found on door of cabinet rarely used, located in basement, and opened by robbers coupled with other evidence including records of telephone calls connecting defendant to prior owner of home where robbery occurred); Fazzino, 27 Mass. App. Ct. at 486-487 (location of defendant's fingerprints on box that defendant, who was familiar with premises, would not have "casually" handled on previous visit to premises, coupled with, among other things, possible ill feelings of defendant toward victim).

In Morris, 422 Mass. at 257-258, on the other hand, in which we reversed the defendant's conviction, we concluded that the defendant's fingerprint on a mask found near the scene of the crime was not evidence sufficient to connect the defendant

---

[2] The defendant does not contest the analysis of the fingerprint or argue that it is not his fingerprint.

to the crime.  In that case, there was some evidence, from which a reasonable inference could have been drawn, that the defendant was associated with two other defendants, the White brothers (who had already been convicted), as well as, among other things, evidence that linked the White brothers to the defendant's residence.  This was not enough, however, to conclude "beyond a reasonable doubt that the thumbprint was placed on the mask during the commission of the crime."  Id. at 259-260.  As in Morris, the corroborating evidence here, when coupled with the fingerprint, does not support a conclusion that the defendant was guilty of the crimes charged beyond a reasonable doubt.

Officer Rooke estimated that the top of the plexiglass, when it was seated in the frame, would have been more than six feet, four inches above the ground.  Detective Jenkins estimated that the location of the fingerprint would be between five feet, eight inches and six feet from the ground.  This presumes that the fingerprint was located on the "top" of the plexiglass -- that is, the portion of the plexiglass that would be furthest from the ground and less readily accessible to a passerby.  The evidence did not adequately establish, however, which part of the plexiglass was the "top" and which was the "bottom" when it was seated in the frame.  While Detective Jenkins thought that the location of the fingerprint was the "top" of the plexiglass, he was "not sure."  There was no additional evidence on this point, leaving open the possibility that the fingerprint was in fact located on a portion of the plexiglass that was easily accessible to a passerby.

Even if the fingerprint was at the top of the window, it was, in Detective Jenkins's estimation, no more than six feet from the ground.  This is not so high that it could not have resulted from an innocent touching.  Coupled with the fact that, as Detective Estrada testified, fingerprints can remain on a surface for a long time, this reasonably suggests that the fingerprint could have been left at some previous time, unrelated to the break-in.

Perhaps more important, the plexiglass became accessible to any passerby as soon as it was removed from the window frame and set on the ground, leaning against the market's front door.  There is no evidence in the record as to what time the proprietor was alerted to the break-in or when she went to the store and saw that the plexiglass had been removed.  All that we know for certain is that the proprietor closed the store at 6 P.M. on August 30 and went back some time "during the night"

after learning of the break-in, and that police officers arrived at the scene around 7 A.M. on August 31.  The plexiglass, therefore, could have been readily accessible to any passerby for several hours or more.

It is generally true in criminal cases that the Commonwealth does not have to present evidence that "exclude[s] every reasonable hypothesis of innocence" (citation omitted).  Commonwealth v. Merola, 405 Mass. 529, 533-534 (1989).  In a case such as this one, however, where the fingerprint evidence is the only identification evidence, the Commonwealth does have to present evidence that reasonably excludes the hypothesis that the fingerprint was left at some time other than when the crime was committed.  Even if the "evidence and reasonable inferences from it tend to indicate that the [finger]print might have been placed" on the plexiglass during the crime, the evidence still must "warrant a finding beyond a reasonable doubt" that this is what occurred.  Morris, 422 Mass. at 257-258.  The evidence here does not do that, and the Commonwealth therefore has not shown beyond a reasonable doubt that the defendant left his fingerprint at the time of the break-in.

Judgments reversed.


Joseph Visone for the defendant.
Alyson C. Yorlano, Assistant District Attorney, for the Commonwealth.