APPEALS COURT 
 
 COMMONWEALTH vs. CARLOS CUBA

 
 Docket:
 24-P-185
 
 
 Dates:
 September 5, 2025 – November 6, 2025
 
 
 Present:
 Vuono, Massing, & Allen, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Evidence, Expert opinion, Fingerprints, Identification. Identification. Assault and Battery by Means of a Dangerous Weapon. Breaking and Entering. Witness, Expert. Practice, Criminal, Motion for a required finding.
 
 

  
      Indictments found and returned in the Superior Court Department on December 15, 2020.
      The cases were tried before Jane E. Mulqueen, J.
      James E. Methe for the defendant.
      John A. Wendel, Assistant District Attorney, for the Commonwealth.
      MASSING, J.  In this appeal, the defendant, Carlos Cuba, contends that a single fingerprint was insufficient to prove his presence at the crime scene beyond a reasonable doubt.  In the circumstances of this case, where the evidence permitted the inference that the defendant touched the victim's car during the commission of the crime and ruled out any reasonable possibility that he touched the victim's car at any other time, we hold that the evidence was sufficient.  Further concluding that an error in the way the fingerprint evidence was presented did not create a substantial risk of a miscarriage of justice, we affirm.
      Background.  On July 26, 2020, the victim, who lived in Springfield, was involved in an altercation with three men, all strangers to him, that ended with the victim being stabbed outside a local liquor store.  The victim, who had not cooperated with the police investigation, testified that the incident began when he encountered two of the men at a gasoline station.  One, whom the victim described as a "tall [B]lack man," approached the victim with a knife.  The victim backed into the other man, "a short Spanish dude," then the two men got into a tan or white car and drove away.  The victim drove home, where he saw the same car pulling up his street, so he followed it to the vicinity of the liquor store.
      The ensuing fight was captured on multiple Springfield municipal surveillance cameras.  As the video surveillance footage was played during trial, the victim pointed out the "tall [B]lack man," who was wearing a white T-shirt; the "short Spanish dude," who was wearing gray clothing; and a third man, "a little taller Spanish guy" wearing all red.  The victim narrated a portion of the video footage in which he was trying to move away from "the shorter Spanish guy," who now had a knife.  The video footage next showed this man opening the driver's side door of the victim's car, getting in the driver's seat, and getting out again, touching the doorframe as he did so.  At this point, the "tall [B]lack man," who also had a knife, held the victim while the "short Spanish guy" hit and stabbed him.  The victim managed to grab the hand of the Black man that was holding the knife and stab him with it.  Immediately after the fight broke up, the victim realized he had been stabbed in the chest, got into his car, and drove himself to a hospital.
      While the victim was being treated, two Springfield police officers arrived at the hospital.  The officers had the victim's car towed to a secure garage operated by the Springfield Police Department.  At that garage the following day, Sergeant Juan Estrada Marquez (Estrada)[1] -- then a detective for the Springfield Police Department crime scene unit -- processed the car for fingerprints.  Estrada found several sets of fingerprints that he determined were sufficient for evaluation and submitted them into the automated fingerprint identification system, a fingerprint database.  As to one partial fingerprint, the system returned a list of candidates that included the defendant.  Estrada compared the defendant's fingerprint to the partial latent fingerprint taken from the exterior doorframe of the driver's side door of the victim's car and found at least eight points of comparison.
      The defendant was tried before a Superior Court jury, together with a codefendant, on the theory that the defendant was the "shorter Spanish guy" who entered the victim's car and left his fingerprint on the doorframe, and the codefendant was the "tall [B]lack man."[2]  Estrada was qualified as an expert in fingerprint identification.  During Estrada's testimony, the prosecutor asked him whether "based on [Estrada's] training and experience, [he had] an opinion to a degree of scientific certainty as to who left . . . the partial print."  Estrada answered that based on his "personal training and experience," he "believe[d]" the print belonged to the defendant.  The defendant did not object.
      The defendant was convicted of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b), and of breaking and entering a motor vehicle in the daytime with intent to commit a felony, G. L. c. 266, § 18.
      Discussion.  1.  Sufficiency of the evidence.  At the close of the evidence, the defendant moved for required findings of not guilty, arguing that the fingerprint evidence was insufficient to identify him as the man who stabbed the victim.  The judge denied the motions.
      In reviewing the denial of a motion for a required finding of not guilty, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  Where a fingerprint is the only identification evidence, the Commonwealth must prove beyond a reasonable doubt that the fingerprint was placed during the commission of the charged crime.  See Commonwealth v. French, 476 Mass. 1023, 1024 (2017).  In other words, the Commonwealth's evidence must "reasonably exclude[] the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed."  Commonwealth v. Fazzino, 27 Mass. App. Ct. 485, 487 (1989).  "This principle applies" -- to both fingerprints and deoxyribonucleic acid (DNA) profiles -- "because the presence of a fingerprint [or DNA] on an object alone provides insufficient data to determine when the fingerprint was placed on the object."  Commonwealth v. Anitus, 93 Mass. App. Ct. 104, 108 (2018).
      The defendant argues that because the fingerprint on the exterior of the victim's car was the only direct evidence that he was at the scene, and the Commonwealth failed to prove it had been left there during the altercation with the victim, he was entitled to a required finding of not guilty.  However, the cases concluding that the Commonwealth failed to meet its burden with regard to fingerprint evidence, including Commonwealth v. Morris, 422 Mass. 254, 256-260 (1996), and Anitus, 93 Mass. App. Ct. at 104-106, 111, on which the defendant primarily relies, are distinguishable.  In both cases, the defendant's fingerprint or DNA was recovered from items discarded at the scene of a crime.  See Morris, supra at 254-258 (defendant's fingerprint found on plastic clown mask left at scene of armed assault); Anitus, supra at 105-107 (T-shirt and bandana recovered from scene of armed robbery contained defendant's DNA).  Although it was possible that the defendants had left their fingerprints on these "portable objects" during the commission of the crime, id. at 110, it was at least equally plausible that the defendants had touched the items at some other place and time, and that someone else later transported the items to the crime scene.  See Morris, supra at 254 n.1, 259 (two men, who had been tried earlier and convicted of same murder, had "association" with defendant and "may have simply used the defendant's home as a base of operations"); Anitus, supra at 105-107, 110-111 (defendant's brother had been involved in robbery "with a similar modus operandi," including use of same vehicle).
      In this case, the defendant's fingerprint was recovered from the victim's car.  Although technically "a moveable object," Anitus, 93 Mass. App. Ct. at 104, the victim's car was, for all intents and purposes, the site of the charged crimes.  This case therefore bears a closer resemblance to French, 476 Mass. at 1023, and Commonwealth v. Hoa Sang Duong, 52 Mass. App. Ct. 861, 862-867 (2001), in which the defendants left fingerprints at the crime scene itself.
      In French, 476 Mass. at 1023, the defendant was convicted of breaking and entering a market and larceny of $400 to $500 worth of cigarettes.  His fingerprint was found on a plexiglass window pane that had been removed from its frame during the break-in.  Id. at 1023-1024.  Prior to the crime, the window pane "was easily accessible to a passerby," and after it was removed it had been "set on the ground, leaning against the market's front door," where it "could have been readily accessible to any passerby for several hours or more."  Id. at 1025.  In those circumstances, where the defendant could have touched the window pane on the street hours after the crime, the court concluded that the Commonwealth had failed to prove beyond a reasonable doubt "that the defendant left his fingerprint at the time of the break-in."  Id.  By contrast, here the victim drove to the hospital immediately after the stabbing, and the police secured and towed his car from the hospital while he was still being treated for his injuries, eliminating the defendant's opportunity to touch the vehicle after the commission of the crime.[3]
      This case is further distinguishable from French, 476 Mass. at 1024-1025, because video surveillance footage shows one of the victim's attackers, the "short Spanish guy," touching the portion of the vehicle from which the defendant's fingerprint was recovered.  As such, this case more closely resembles Hoa Sang Duong, 52 Mass. App. Ct. at 862-864, in which a police officer responding to a report of an armed robbery at 10:30 P.M. saw a suspect close the door of the getaway car as he fled.  The defendant's fingerprint was found on the same door, and the defendant was found a few blocks from the crime scene the next morning.  See id. at 864-865.  This evidence was sufficient to support the jury's inference that the defendant was present at the scene of the crime.  See id. at 866-867.  Likewise, in the instant case, the video recording provided the jury with evidence "to determine when the fingerprint was placed on the object."  Anitus, 93 Mass. App. Ct. at 108.
      The surveillance video footage in this case, coupled with the victim's testimony, added, albeit marginally, to the Commonwealth's proof.  The video footage, taken from a distance, is clear enough that the viewer can make out the clothing and relative stature of the victim and his assailants, and it shows the shortest of the three assailants, dressed in gray, touching the driver's side door of the victim's car.  One of the investigating police officers testified that the defendant was five feet, four inches or five feet, five inches tall, and his codefendant was six feet, five inches tall or taller.[4]  Thus, the video footage corroborated the descriptions provided by the defendant, at least generally.  Contrast Anitus, 93 Mass. App. Ct. at 111 (surveillance video footage was "of such poor quality" that it did not assist Commonwealth in tying defendant to crime).
      It remains for us to consider whether the evidence "reasonably exclude[d] the hypothesis that the fingerprint was left at some time" prior to the commission of the crime.  French, 476 Mass. at 1025.  In other words, we ask whether there is a "reasonable possibility" that the defendant had access to the victim's car before the crime.  See Chapman v. California, 386 U.S. 18, 23-24 (1967), quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963) ("There is little, if any, difference between [asking] 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction'" and asking whether government proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").
      The victim and the defendant were strangers.  The defendant had no reasonable opportunity to touch the victim's car until their first encounter at the gasoline station or moments later in front of the liquor store.  While the evidence permitted the inference that the defendant's fingerprint was placed on the exterior doorframe of the car during the fight, the evidence provided no explanation how the defendant's fingerprint might have ended up there beforehand.  "Proof beyond a reasonable doubt does not mean proof beyond all possible doubt, for everything in the lives of human beings is open to some possible or imaginary doubt."  Commonwealth v. Russell, 470 Mass. 464, 477 (2015).  Although it is possible to imagine that the defendant randomly happened upon the victim's car somewhere in Springfield in the days prior to the crime and intentionally or accidentally touched the frame of the driver's side door, this is not a reasonable possibility.
      Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendant's fingerprint was placed on the victim's car during the commission of the charged crimes.
      2.  Propriety of expert's opinion testimony.  The defendant argues that the prosecutor improperly asked Estrada whether he had identified the fingerprint on the victim's car "to a degree of scientific certainty" (emphasis added).  Additionally, the defendant asserts that even though defense counsel failed to object, the trial judge should have interrupted sua sponte to prevent Estrada from responding.
      Fingerprint experts may not express an "absolute certainty" that a match exists.  Commonwealth v. Escobar, 493 Mass. 694, 714 (2024), quoting Commonwealth v. Gambora, 457 Mass. 715, 729 n.22 (2010).  It is not enough for a fingerprint expert to avoid testifying that the match is one hundred percent certain; the Commonwealth has an affirmative duty to establish on direct examination that the expert's testimony is only an opinion based on the expert's education, training, and experience, even if the defendant does not object.  See Commonwealth v. Robertson, 489 Mass. 226, 238-239, cert. denied, 143 S. Ct. 498 (2022).  The prosecutor should "ask whether the witness has an opinion 'to a reasonable degree of fingerprint analysis certainty,'" id. at 238, which is "similar to the manner in which our appellate courts permit other empirically based but subjective opinions to be presented," id. at 238-239, quoting Commonwealth v. Pytou Heang, 458 Mass. 827, 848 (2011).[5]
      Indeed, in her endorsement allowing the Commonwealth's motion in limine to admit fingerprint evidence, the trial judge wrote, "Fingerprint expert to testify consistent with Commonwealth v. Robertson, [489 Mass. at 238,] and Commonwealth v. Armstrong, [492 Mass. 341, 355 n.31] (2023)."  Against these clear directives, the prosecutor's question was beyond "inartful," as the Commonwealth concedes.[6]  It was error.
      However, because defense counsel did not object, "we review the defendant's claim to 'determine whether [the] error . . . created a substantial risk of a miscarriage of justice.'"  Commonwealth v. Horne, 476 Mass. 222, 226 (2017), quoting Commonwealth v. Zimmerman, 441 Mass. 146, 150 (2004).  "A substantial risk of a miscarriage of justice exists if we have serious doubt whether the result of the trial might have been different had the error not been made."  Commonwealth v. Schoener, 491 Mass. 706, 722 (2023).
      Because the defendant disputed at trial whether the fingerprint was his, he argues Estrada's apparent "scientific" certainty could have influenced the jury to an inappropriate degree, thereby creating a substantial risk of a miscarriage of justice.  However, "[e]rrors of this magnitude are extraordinary events and relief is seldom granted."  Commonwealth v. Randolph, 438 Mass. 290, 297 (2002).  This concept is demonstrated in the very cases the defendant has cited, which concluded similar testimony did not create a substantial likelihood of a miscarriage of justice.  See, e.g., Commonwealth v. Honsch, 493 Mass. 436, 452-454 (2024); Armstrong, 492 Mass. at 354-358; Robertson, 489 Mass. at 238-239; Commonwealth v. Fulgiam, 477 Mass. 20, 44-45, cert. denied, 583 U.S. 923 (2017).[7]
      If the prosecutor's improper questioning -- or the judge's failure to correct it -- in any way prejudiced the defendant, the prejudice was minimal in context of the expert's entire testimony.  Aside from the exchange with which the defendant takes issue, Estrada appropriately presented the fingerprint evidence as opinion, not as fact, on direct examination.  Estrada even couched his response to the prosecutor's improper question in the recommended terms, clarifying that his conclusions were a "belie[f]" based on his "personal training and experience."  Furthermore, defense counsel repeatedly addressed the fallibility and subjectivity of fingerprint evidence, including during both opening and closing statements.  He subjected Estrada to rigorous cross-examination, questioning his qualifications, his standard operating procedure, his confidence and credibility, and the limitations of fingerprint evidence, both in this case and generally.  Defense counsel's "vigorous cross-examination of the analyst countered any possible misconception that [fingerprint analysis] is infallible."  Fulgiam, 477 Mass. at 45.
      Considering the well-developed record in this case, we are confident that the result would have been the same if the prosecutor had taken greater care to phrase his question, or if the judge had prevented Estrada from responding and had asked the prosecutor to reframe the question.  The error did not create a substantial risk of a miscarriage of justice.
Judgments affirmed.
footnotes

          [1] Both parties referred to this witness as "Estrada" at trial, and the Commonwealth did the same throughout its brief.  We follow suit.
               [2] A knife was found in the victim's car.  Deoxyribonucleic acid (DNA) extracted from blood found on the knife was consistent with the codefendant's DNA profile.  The codefendant's appeal is not before us.
               [3] We discuss infra the possibility that the defendant left his fingerprint on the victim's car at some point before the crime.
               [4] In addition, the victim testified that the short man dressed in gray was "Spanish" in appearance.  The defendant was present in the court room, and in closing argument the prosecutor stated, "Look at him.  He's a short Hispanic male."  The defendant did not object.
               [5] In Pytou Heang, 458 Mass. at 849, which concerned expert testimony on ballistics, the court commented that the phrase "reasonable degree of scientific certainty" should be avoided "because it suggests that forensic ballistics is a science, where it is clearly as much an art as a science."  The Supreme Judicial Court has declined to extend Pytou Heang to all expert opinion testimony.  See Commonwealth v. Ronchi, 491 Mass. 284, 303 (2023).
               [6] We urge the parties to review the case law and the recommendations and commentary articulated in the Massachusetts Guide to Evidence regarding the presentation of fingerprint evidence.  See Mass. G. Evid. § 702 note (2025) ("Illustrations. . . . Fingerprints").
               [7] We note these cases analyze the issues under the substantial likelihood of a miscarriage of justice standard, which applies in cases of murder in the first degree.  The substantial risk standard, applicable in the instant case, is less favorable to the defendant.  See Commonwealth v. Millien, 474 Mass. 417, 432 n.12 (2016).